IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# MIDDLE DIVISION.

NASHVILLE, DECEMBER TERM, 1888.

UNIVERSITY OF THE SOUTH *v.* SKIDMORE.

(*Nashville.*   December 18, 1888.)

1. TAXATION. *Charter exemption to corporation. Dependent on title, not use.*
   Charter exemption of realty " from taxation *so long as said land belongs to*" an incorporated institution of learning, remains in force so long as *title* remains in the corporation. It does not depend upon the *use* made of the property.

2. SAME. *Same. Legislative power under Constitution of 1834.*
   The power of the Legislature, under the Constitution of 1834, to grant such special exemption of realty to a corporation by charter provision, is well settled by adjudications, and is not now an open question.

Cases cited and approved: Railroad *v.* Hicks, 9 Bax., 442; State *v.* Butler, 86 Tenn., 614; *In re* Union and Planters' Bank, 13 Lea, 407.

3. SAME. *Same. Exemption dependent alone on title not defeated, when.*

A university entitled under its charter to exemption of its realty from taxation *so long as it retains the title* thereto, does not so far renounce title as to defeat the exemption, by giving leases thereof for terms of from one to thirty-three years, with renewal options, to divers persons, who build up a village thereon—the annual rents being reserved and devoted exclusively to the purposes of the university.

Case cited and approved: North-western University *v.* People,. 99 U. S., 309.

---

### FROM FRANKLIN.

---

Appeal from the Chancery Court of Franklin County.    W. S. BEARDEN, Ch.

A. S. MARKS for University.

Attorney-General PICKLE, J. J. WILLIAMS, ESTILL & WHITAKER, and W. H. BRANNON *contra.*

EDWARD H. EAST, Sp. J.    I am directed by the Court to deliver the following opinion in these consolidated cases:

The University of the South filed its original injunction bill against A. J. Skidmore, Trustee of Franklin County, enjoining him from proceeding to assess for taxation for *State* purposes certain property belonging to complainants. Franklin County filed its bill against the University of the South

to collect taxes which had been assessed against said university, and to have the lien of the county declared by decree and the taxes collected by sale of the property, or otherwise. .

The University of the South was chartered by the Legislature of Tennessee on the sixth day of January, 1858, and is under the control and patronage of the Protestant Episcopal Church. The pleadings and evidence disclose the following facts:

The tenth section of the charter of this university is as follows:

"SEC. 10. *Be it further enacted,* That said university may hold and possess as much land as may be necessary for the building, and to such an extent as may be sufficient to protect said institution, and students thereof, from intrusion of evil-minded persons who may settle near said institution; said land, however, not to exceed ten thousand acres, *one thousand acres of which, including buildings and other effects and property of said corporation, shall be exempt from taxation so long as said land belongs to said university.*"

The one thousand acres have been laid off as designated by metes and bounds, and upon this the buildings of the university have been erected, together with professors' houses, etc. A part of this one thousand acres along the line of the railroad has been subdivided into town lots, streets laid off and graded; along these dwelling-houses and store-houses and a hotel have been erected, and rented to persons upon leases extending from one year to

thirty-three years, and with renewal options given
to the tenants in some instances; making in all
three hundred houses, and constituting the village
of Sewanee.    These lands, and the entire property
of the corporation, were given to it by liberal-
minded donors originally or from time to time.
The assessments complained of were made and
sought to be made upon the one thousand acres of
real estate and improvements so rented or leased,
excluding therefrom the university buildings proper
and a church, but including the houses of pro-
fessors.

With the exclusion mentioned, the assessing offi-
cers seek to assess this one thousand acres, and
improvements thereon, for the current year, and
also under the special statute of the State passed
in 1885 and amended in 1887, empowering "back
assessments" for the years 1884, 1885, and 1886, as
follows: For 1884, $98,710; for 1885, $99,360; for
1886, $105,250; and for the current year (1887)
about $100,000.

It is shown that all emoluments and profits
arising from leases, amounting to some twelve or
fifteen hundred dollars per year, were used and
devoted by the corporation to the purposes of the
university, and not otherwise.    The university is
evidently seeking by these leases to raise an income,
endowment, or sustentation fund, with which to
carry on the institution and promote and extend
its usefulness as an educational institution by a
judicious use of its real estate and turning back

to the institution all incomes and rents so derived, to be used for the purposes of the institution, and thus make the property contribute to these ends. It is claimed that this action of the corporation in using its property as stated is a use not contemplated by the Legislature, and deprives it of the exemption from taxation which, under the tenth section of the charter, it would be entitled to.

The Chancellor decreed that the university "was not exempted from taxation for the one thousand acres, except to the extent of so many of the lots assessed as were occupied by the officers, trustees, professors, and agents of said university; that all other lots upon said one thousand acres are subject to taxation;" and he dismissed the injunction as to the one and made it perpetual as to the other. The Court gave Franklin County a decree for the amount of the taxes claimed to be due it upon the same basis.

The clause of exemption is plain and free of obscurity: "*One thousand acres of which, including buildings and other effects and property of said corporation, shall be exempt from taxation so long as said land belongs to said university.*"

It is also claimed and argued at bar that the exemption clause is void, because, under the Constitution adopted in 1834, and in force at the time the Legislature granted the charter, the Legislature had no power to grant exemptions from taxation to real property belonging to incorporated institutions of learning, by special charter. This ques-

tion has long since been settled by adjudications of this Court, and is not now an open question in this State. *Railroad Company* v. *Hicks*, 9 Bax., 442; *State* v. *Butler*, 2 Pickle, 614; *In Re Union & Planters' Bank*, 13 Lea, 407.

The power to make the exemption existing in the Legislature, it only remains to determine what is the extent, condition, and scope of the exemption. The contention of the State and county seems to be that this one thousand acres would be exempt from taxation so long as it remained as it was at the time the charter was granted: unproductive and standing in primitive forest, or was *used* in some way in connection with the object of the institution—viz., the training and education of young men.

Under the tenth section of this charter as quoted, the exemption is not made to depend upon *use* to which the land might be put, but relates to the *title*—"so long as such land *belongs* to said university." The attention of the Legislature was called to the fact that the State might at some time resume the right to tax this property, and it stipulated that this right should be resumed, not upon the condition that the university *rented* or *leased* the property, or made any other lawful use of it, but upon the condition the university parted with the title. The Legislature conceived, it is evident, that this property might be owned by the university, and that such ownership would not be an act outside of the purposes and objects of the

University of the South *v.* Skidmore.

corporation, and made no limitation upon its use. It is the legal and moral duty of this corporation to so use the property, and all other assets belonging to it, as to best promote the ends and purposes for which it was created; and if by leasing it an income to the university can be created, and by this income it is enabled to extend its usefulness, it is the right and *duty* of this corporation to do so. By this means the property is made to contribute directly to the support of the institution, and subserve the great public purposes for which it was created, and which the Constitution of the State enjoins upon the Legislature at all times to foster and "cherish."

It would be hard to conceive to what uses, other than leasing or renting it to select persons, where business, trades, or occupations would be directly or remotely auxiliary to the necessities or convenience of the university and its inmates and officers, the corporation could put this one thousand acres of land which the Legislature authorized it to hold. The power to hold the ten thousand acres was to enable the corporation to keep "evilminded persons" at a long distance from the university and from contact with the young men and youths attending it. The ownership of ten thousand acres, with the university located near the center of the tract, would make it the "master of the situation" as respects that class of persons whose presence or proximity was not desirable.

How could the university utilize the one thousand acres? It is not a manual labor school or an agricultural college, and, besides, the lands are not adapted to agriculture, being rough and mountainous. Certainly the Legislature did not intend that the land should remain forever of no positive utility to its owner. The only value of land consists in its adaptation and use. We cannot concur in the argument that the effort of this corporation to utilize these lands by leasing or renting it, and thus make it subservient to the chief end and purpose of the corporation, deprives it of exemption given by the State for the encouragement of such institution. *North-western University* · v. *People,* 99 U. S., 309.

The decree of the Chancellor will be reversed, and the assessments made will be declared void, because the property is exempt from taxation for State or county purposes so long as it belongs to the university; and the injunction against A. J. Skidmore, Trustee, will be re-instated and made perpetual, and the bill of Franklin County dismissed. The defendants, A. J. Skidmore and the county of Franklin, and the securities of the latter, will pay all costs.

Judge Lurton did not sit in this case.