Lodge v. Nashville.

CUMBERLAND LODGE, NO. 8, FREE AND ACCEPTED MASONS
v. MAYOR AND CITY COUNCIL OF NASHVILLE.*

(*Nashville.* December Term, 1912.)

1. **TAXATION.** Legislature cannot grant exemptions **from**
taxation except as authorized by constitution; rule **before**
constitution of 1870.

Under the previous constitutions, and before that of 1870 (art.
2, sec. 28), it was *held* that the grant of immunity from taxation
by a legislative act in the charter of a corporation was a con-
tract by which the State was bound, the obligation of which
could not be impaired by subsequent legislation, or consti-
tutional provision; but since the limitations placed upon the
legislature by the constitution of 1870 (art. 2, sec. 28), it has
been *held* that the legislature was thereby prohibited from
granting any other tax exemption than such as was authorized
by that constitution. (*Post, pp.* 255, 256.)

Constitution cited and construed: Art. 2, sec. 28.

Cases cited and approved: Railroad v. Wilson Co., 89 Tenn., 608;
State v. Bank, 95 Tenn., 226.

2. **SAME.** Determination of extent, condition, and scope of tax
exemption made under power.

Where the power to make the tax exemption exists, it only re-
mains for the court to determine what is the extent, condition,
and scope of the exemption made in legislation. (*Post, p.*
258.)

Case cited and approved: University v. Skidmore, 87 Tenn., 160.

---

*On the question whether a fraternal benefit society is a
benevolent or charitable association within exemption statutes, see
note in 7 L. R. A. (N. S.), 380.

For the effect of the fact that property otherwise exempt
from taxation is devoted to purposes of a particular society, see
notes in 16 L. R. A. (N. S.), 829, and 26 L. R. A. (N. S.), 696.

Lodge v. Nashville.

3. SAME.  Strictness of constuction of tax exemptions is not applied to religious, scientific, literary, and educational institutions.

The intention of the legislature must govern in ascertaining the extent of tax exemptions, but in arriving at such intention the same strictness of construction will not be indulged, where the exemption is to religious, scientific, literary, and educational institutions, as will be applied in considering exemptions to corporations created and operating for private gain or profit. (*Post, pp.* 258, 259.)

Cases cited and approved:    State v. University, 87 Tenn., 242; Church v. Hinton, 92 Tenn., 190.

4. SAME.  Fundamental ground of tax exemptions in favor of religious, charitable, scientific, and educational institutions.

The fundamental ground upon which all tax exemptious in favor of religious, charitable, scientific, and educational institutions are based is the benefit conferred upon the public by such institutions, and a consequent relief, to some extent, of the burden upon the State to care for and advance the interests of its citizens.   (*Post, p.* 259.)

Case cited and approved:   Church v. Hinton, 92 Tenn., 190.

5. STATUTORY CONSTRUCTION.  Practical construction by those charged with enforcement of statute is persuasive in its judicial construction.

A uniform and practical construction of a statute by those whose duty it was to construe and execute the statute is of great and persuasive weight in the judicial construction of the same. (*Post, pp.* 260, 261.)

Cases cited and approved:   Austin v. Shelton, 122 Tenn., 634; Plow Co. v. Hays, 125 Tenn., 155; State, ex rel., v. Addison, 2 S. C., 499-509.

6. TAXATION.  Exemption of property of charitable institutions is not destroyed by renting out property.

Under the constitutional provision (art. 2, sec. 28) that all property shall be taxed, but that the legislature may except, among

others, such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational, and under the statutory provision (Acts 1907, ch. 602, sec. 2, subsec. 2) that all property belonging to any religious, charitable, scientific, or educational institution, when used exclusively for the purpose for which said institution was created, or is unimproved and yields no income, shall be exempt from taxation; but that all property belonging to such institution, used in secular business and competing with a like business which pays taxes to the State, shall be taxed in proportion as its property may be used in competition with secular business which pays taxes to the State, the mere fact that a charitable institution rented out its property will not destroy its exemption from taxation. (*Post, pp.* 252-263, but especially 257, 258.)

Acts cited and construed: Acts 1907, ch. 602, sec. 2, subsec. 2.

Constitution cited and construed: Art. 2, sec, 28.

Case cited and approved: University v. Cheney, 116 Tenn., 260.

7. SAME. Words "purely" in constitution and "exclusively" in statute exempting property of religious, charitable, scientific, or educational institutions are synonymous, and require the whole property or profits to be used for such purposes.

Under the constitutional provision (art. 2, sec. 28) that all property shall be taxed, but that the legislature may except, among others, such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational, and under the statutory provision (Acts 1907, ch. 602, sec. 2, subsec. 2) that all property belonging to any religious, charitable, scientific, or educational institution, when used exclusively for the purpose for which said institution was created, the words "purely" and "exclusively" are synonymous, and require that the property be used wholly for the purposes mentioned, and not to any extent for gain or profit, unless the gain or profit be used for the purposes mentioned. (*Post, p.* 264.)

Acts cited and construed: Acts 1907, ch. 602, sec. 2, subsec. 2.

Constitution cited and construed: Art. 2, sec. 28.

Case cited and approved: Church v. Hinton, 92 Tenn., 191.

Lodge v. Nashville.

8. **SAME. Masonic lodge is an educational and charitable institution entitled to exemption from taxaton as such, when.**

Under the constitutional provision (art. 2, sec. 28) that all property shall be taxed, but that the legislature may except, among others, such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational, and under the statutory provision (Acts 1907, ch. 602, sec. 2, subsec. 2) that all property belonging to any religious, charitable, scientific, or educational institution, when used exclusively for the purpose for which said institution was created, a Masonic lodge, whose purposes were the teaching of ethics, fraternity, patriotism, benevolence, and orderly moral life, for the purpose of the improvement of its members and the extension of the influence and blessings of Masonry, and to assist in the support and maintenance of a widows' and orphans' home, and further to provide for the welfare and comfort of its own members and those of other lodges, by providing comfortable lodge rooms, is purely an educational and charitable institution, so that its property is exempt from taxation; and it is recognized by legislation that a Masonic lodge is a charitable institution. (*Post, pp.* 253, 254, 257, 260, 261, 262, 264, 265.)

Code cited and construed: Sec. 2513, subsec. 2 (S.); sec. 1973, subsec. 2 (M. & V.).

Acts cited and construed: Acts 1857-58, ch. 117, sec. 18; Acts 1875, ch. 142, sec. 1; Acts 1907, ch. 602, sec. 2, subsec. 2.

Constitution cited and construed; Art. 2, sec. 28.

Case cited and approved: Church v. Hinton, 92 Tenn., 191.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

PARKS & BELL, for complainant.

ALBERT G. EWING, JR., City Attorney, FRANK M. GARARD, Assistant City Attorney, and E. J. SMITH, for defendants.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

The single question presented by this record is whether or not the property of the above lodge is exempt from municipal taxes under the constitution and laws of the tion therefrom; the answer and cross bill of the municipality are for the year 1910, and amount to $1,609.50 and interest thereon at six per cent. from December 14, 1910. The pleadings consist of the original bill of the lodge, seeking a decree perpetually enjoining the collection of the taxes, and setting up the claim of exemption therefrom; the answer and cross bill of the municipality, denying the right of exemption, and seeking a decree for the amount of the taxes, costs, etc.; and the answer of the lodge to the cross bill.

The proof was supplied by a stipulation of counsel. The final decree of the chancery court, rendered by Hon. John Allison, chancellor, declared the property of the lodge to be exempt from taxes, and perpetually enjoined the municipality from collecting the taxes in question, and from this decree the case is before this court on appeal.

The assignments of error are four in number, but may be treated as raising only one question, which is: Was there error in the decree?

Article 1, sec. 26, of the constitution of the State of Tennessee of 1796, provided that "all lands liable to taxation in this State, held by deed, grant or entry, shall be taxed equal and uniform, in such manner that no one hundred acres shall be taxed higher than another, except town lots, which shall not be taxed higher than two hundred acres of land each; no free man shall be taxed higher than one hundred acres, and no slave higher than two hundred acres, on each poll."

The provision in the constitution of 1834 on the same subject is found in article 2, sec. 28, of that constitution, and is as follows: "All lands liable to taxation, held by deed, grant or entry, town lots, bank stock, slaves between the ages of twelve and fifty years, and such other property as the legislature may from time to time deem expedient shall be taxable. All property shall be taxed according to its value; that value to be ascertained in such manner as the legislature shall direct, so that the same shall be equal and uniform throughout the State. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of equal value. But the legislature shall have power to tax merchants, peddlers, and privileges, in such manner as they may, from time to time, direct. A tax on white polls shall be laid in such manner and of such amount as may be provided by law."

The section of the constitution of 1870, corresponding to the above-quoted sections from each of the other Constitutions, is found in article 2, sec. 28, of the Constitution of 1870, and is as follows:

"All property, real, personal or mixed, shall be taxed but the legislature may except such as may be held by the State, by counties, cities, or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, and shall except one thousand dollars worth of personal property in the hands of each taxpayer, and the direct product of the soil in the hands of the producer, and is immediate vendee. All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value, but the legislature shall have power to tax merchants, peddlers and privileges, in such manner as they may from time to time direct. The portion of a merchant's capital used in the purchase of merchandise sold by him to nonresidents and sent beyond the State, shall not be taxed at a rate higher than the *ad valorem* tax on property. The legislature shall have power to levy a tax upon incomes derived from stocks and bonds that are not taxed *ad valorem*. All male citizens of this State over the age of twenty-one years except such persons as may be exempted by law on account of age or other infirmity shall be liable to a poll tax of not less than fifty cents nor more than one dollar per annum. Nor shall any county or corporation levy a poll tax exceeding the amount levied by the State."

Lodge v. Nashville.

It is to be observed that under the constitution of 1796, the provision was: "All lands liable to taxation in this State . . . shall be taxed." And under the constitution of 1834, the provision was: "All lands liable to taxation, held by deed, grant, or entry, . . . shall be taxable." But under the constitution of 1870, the provision was: "All property, real, personal or mixed, shall be taxed, but the legislature may except such as may be held by the State, by counties, cities or towns, and used exclusively for public corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational," etc.

The wider range of discretion allowed to the legislature by the provision of the constitution of 1796, and by the provision of the constitution of 1834, above quoted, resulted in holdings by this court that a grant of immunity from taxation by a legislative act in the charter of a corporation was a contract by which the State was bound, the obligation of which might not be impaired by subsequent legislation, or constitutional provision. *State* v. *Bank of Commerce,* 95 Tenn., 226, 31 S. W., 993, and authorities there cited. But the limitations placed upon the legislature in article 2, sec. 28, of the constitution of 1870, that "all property, real, personal, or mixed, shall be taxed," resulted in the holding by this court that after the adoption of the constitution of 1870, the legislature was thereby prohibited from granting any other exemption than such as was authorized by that constitution. *Railway* v. *Wilson County,*

89 Tenn., 608, 15 S. W., 446, and authorities there cited.

〉  Complainant lodge was founded June 24, 1812, by a dispensation from the Grand Lodge of North Carolina, under the name of Cumberland Lodge, No. 60, Free and Accepted Masons. On December 27, 1813, the Grand Lodge of Tennessee was established, and complainant surrendered the dispensation from the Grand Lodge of North Carolina, and secured dispensation from the Grand Lodge of Tennessee, dated February 8, 1814, and a charter was granted to it under the name of Cumberland Lodge, No. 8, Free and Accepted Masons. It has held its regular meetings in Nashville ever since its first organization. It works under its by-laws, and under the Grand Lodge of Tennessee. It was incorporated by act of the general assembly of the State of Tennessee for the years 1857 and 1858, under the name of Cumberland Lodge, No. 8, of Free and Accepted Masons, in the city of Nashville, of date March 8, 1858. Laws 1857-58, ch. 117. This charter of incorporation contained no provision exempting its property from taxation, and no such claim is made. Its claim of exemption is based on the authority conferred on the legislature by the above-quoted section of the constitution of 1870, and upon what it insists was an exercise of that authority by a legislative act. Numerous acts of the legislature have been passed in the exercise of the authority since the adoption of the constitution of 1870, namely: 1879, chapter 112; 1883, chapter 105; 1889, chapter 96; 1895, chapter 120; 1897, chapter 1; 1899, chapter 435; 1901, chapter 174; 1903, chapter 258;

1907, chapter 602. But the claim of exemption made by complainant is based on subsection 2 of section 2 of the act of 1907, viz.: "All property belonging to any religious, charitable, scientific, or educational institution when used exclusively for the purpose for which said institution was created, or is unimproved and yields no income. All property, belonging to such institution used in secular business and competing with a like business, that pays taxes to the State shall be taxed on its whole or partial value in proportion as the same may be used in competition with secular business."

It is to be noted that the last above quotation is divisible in two parts or sentences. The first part begins with the word "all" and ends with the word "income;" the second part begins with the word "all," and ends with the word "business;" and it is manifest that the second part is a qualification of or limitation upon, the first part. The use made by the complainant of its property, as disclosed by the stipulation of counsel in this record, is in no material respect different from, or other than, the use made by the Vanderbilt University of its property, as disclosed in the case of *University v. Cheney,* 116 Tenn., 260, 94 S. W., 90. In that case it appears that the insistence was made on behalf of the city that the use made by the University of its property brought it within the second or last part of subsection 2 of section 2 of the act of 1899; but this court held in that that the mere act of renting out its property by the University was only an incident to

ownership, and was not a carrying on of business within
the meaning of subsection 2 of section 2 of the act of
1899, and did not destroy the exemption from taxation
which the University in that case was held to be en-
titled to by reason of being an educational institution
under the first part of subsection 2 of section 2 of the
act of 1899. Now it happens that all of subsection 2
of section 2 of the act of 1899 is identical in verbiage
with subsection 2 of section 2 of the act of 1907, as
clearly appears from a comparison of the two acts. The
resulting conclusion is that the contention made by the
city in the present case, based on the use by complain-
ant of its property, and the application of the last part
of subsection 2 of section 2 of the act of 1907, is met
and wholly answered by the reasoning of this court in
the able opinion by Mr. Justice McAlister in *University
v. Cheney,* supra. This elimination leaves for considera-
tion only the question of whether complainant is within
the class or classes of institutions entitled to exemption
under the first part of subsection 2 of section 2 of the
act of 1907.

It has been said by this court that, "the power to
make the exemption existing, it only remains to deter-
mine what is the extent, condition, and scope of the
exemption." *University of the South* v. *Skidmore,* 87
Tenn., 160, 9 S. W., 893.

It has also been held by this court that the intention
of the legislature must govern in ascertaining the ex-
tent of such exemptions, and that in arriving at such
intention the same strictness of construction will not

be indulged, where the exemption is to religious, scientific, literary, and educational institutions, that will be applied in considering exemptions to corporations created and operating for private gain or profit. *State v. Fisk University*, 87 Tenn., 242, 10 S. W., 284.

The case last cited was quoted with approval in *M. E. Church South v. Hinton*, 92 Tenn., 190, 21 S. W., 322, with the additional observation that: "The fundamental ground upon which all such exemptions are based is a benefit conferred upon the public by such institution, and a consequent relief, to some extent, of the burden upon the State to care for and advance the interests of its citizens."

Under the suggestion, made in the last three cases referred to, that the intention of the legislature should be arrived at and control, the complainant refers to section 18 of the charter, which provides in substance that it shall have and enjoy perpetual succession and the privileges granted so long as it shall continue to be and remain, as now, a charitable and benevolent institution and a subordinate lodge of the Grand Lodge of Free and Accepted Masons of the State of Tennessee; and, further, for the same purpose and in the same connection complainant relies on the stipulation that from the year 1858, when it became incorporated, its property has never been assessed for taxation by the State, county, or city until the levy of the assessment in controversy in this case, and that all of the officials whose duty it was to levy taxes within the county of Davidson and city of Nashville have taken the view that the property

of complainant was exempt from taxation under the laws of the State, and that the county and State officials are not now attempting, and never have attempted, to tax complainant's property.

As shedding further light on the intention of the legislature, we are referred to section 2513, Shannon's Code, where, under provisions for the organization of corporations not for profit, in subsection 2, under the heading of "Charity," the following appears: "The support of any benevolent or charitable undertaking—as a lodge of Masons, Odd Fellows, hospitals for the sick, houses of refuge or correction, orphan asylums, and all objects of like nature." It is insisted that this particular statute, which was chapter 142 of the Acts of 1875, shows that the legislature considered a Masonic lodge to be an institution organized for the support of charitable undertakings and that this construction of the legislature of 1875 is strongly persuasive that such a lodge was, within the meaning and intention of the legislature of 1907, a charitable institution.

It is urged for complainant that a uniform and practical construction of a statute by those whose duty it is to construe and execute the statute is of great and persuasive weight in the judicial construction of the same, and to sustain this principle we are referred to *Austin* v. *Shelton*, 122 Tenn., 634, 127 S. W., 446, opinion by Mr. Justice Shields, where the above principle was announced and applied.

As sustaining the same proposition, we are also referred to the case of *State, ex rel. Grand Lodge of Free*

*and Accepted Masons of South Carolina,* v. *Addison,* 2 S. C., 499 to 509, 26 Am. & Eng. Ency. of Law, p. 633-634 and Lewis' Sutherland on Statutory Construction, vol. 2, sec. 474. See, also, *Plow Co.* v. *Hays,* 125 Tenn., 155, 140 S. W., 1068.

On the question as to whether the complainant is such an institution as to fall within the class exempt from payment of taxes, under the act of 1907, it appears from the stipulation in the record that the complainant lodge derives revenue from two sources: First, from the rents of certain of its real estate; and, second, from dues paid by its individual members. Its revenues from its real estate are collected and disbursed by certain trustees, and during the year 1910 its receipts, so collected from real estate, amounted to $7,331.33, and the disbursements by its trustees appear to have amounted to the total sum of $9,029.87. Its current revenue not arising from real estate, for the year 1910, was collected and disbursed by its secretary and treasurer, and amounted to $3,532.67, and the disbursements by its secretary and treasurer amounted to $2,517.11.

Membership in the complainant lodge is extended only to such worthy male white persons, twenty-one years of age, as come under the requirements of the order, and who are unanimously elected. Its halls are not open to the use of the general public, but are open to all members of the fraternity who may visit Nashville. The wives and female relatives of members that come under Masonic requirements are eligible to membership in a collateral order, known as the Eastern

Star lodge, and complainant permits the use of its halls by these lodges, when its halls are not in use by other Masonic lodges who have rented the same.

Complainant keeps a Masonic library and reading room for the use of Masons. Complainant is supported by initiation fees and annual dues, and not by gifts, assessments or donations.

The purposes of complainant are admitted by the stipulation to be as follows:

First. Ethical and fraternal teaching, patriotism, benevolence, and orderly moral life, to the end and for the purpose of improving its members and extending the influence and blessing of Masonry thereby.

Second. To assist in the support and maintenance of a widows' and orphans' home by contributions to the Grand Lodge, which lodge in turn supports the home, and which home is also further contributed to by direct appropriations made by the complainant, not through the Grand Lodge. Complainant's further purpose and work is to assist needy Masons and needy Masonic lodges.

Third. It is fairly inferable from other facts stipulated that one of the steady purposes of the complainant, since its creation, has been to provide for the welfare and comfort of its own members, and those of other lodges, by providing comfortable lodge rooms and meeting places to the end that the work of the lodge may grow and prosper along the lines indicated as its first and second purposes heretofore.

It further appears that all of the complainant's revenues outside of its expenses have been devoted to the furtherance of its three purposes above set out. Complainant has no capital stock, issued or otherwise.

The statute known as 43 Eliz., ch. 4, contained a statement of the general objects which come within the description of a charitable use, and among these were: "The relief of aged, impotent, and poor people, . . education and preferment of orphans," etc. Pomeroy Equity Jurisprudence, vol. 2, sec. 1020. The same author says: "Numerous trusts for purposes of benevolence are upheld as charitable, although not mentioned in the statute, since they are within its spirit and intent. . . . Within this class are trusts for the poor," and the "deserving poor," "widows and orphans of a specified town, district, or county, for hospitals, asylums, and similar public institutions." Section 1022.

Authorities without number may be holding that education and the support of widows and orphans and the maintenance of homes and shelters for destitute widows and orphans are true charities.

Whether the charity done by complainant is one which would be administered by a court of equity; whether it is open to the whole or only a part of the public, whether the persons who may enjoy it are definite or indefinite in number; whether the complainant devotes all or a part only of its income to charity, are not, as we see this case, determinative of it. The real questions, as we see it, are these:

First, What do the words "purely," as used in the section quoted from the constitution of 1870, and "exclusively," as used in the section quoted from the act of 1907, mean? This question, we think, has already been answered by this court; for it has said on this subject in another case: "The terms 'purely,' as used in the constitution, and 'exclusively,' as used in the statute, are synonymous, and mean that the property must be used wholly and entirely for such charitable and religious purposes, and exclude entirely the idea of any individual gain or profit, or, indeed, of any corporate profit, unless it is used purely for such religious and charitable purposes." *M. E. Church South* v. *Hinton,* 92 Tenn., 191, 21 S. W., 322.

The court in the case last cited was considering a state of facts on which it held the purposes of the corporation to be twofold, religious and charitable, and no doubt for this reason failed to mention "scientific" and "educational" institutions, which are each mentioned, both in the constitution and the statute.

The second and last question is whether or not the complainant, upon the proof in this record, may be said to devote all of its profits to any one or more than one of the four objects named in the constitution and in the statute. If it does, then, under the authority of *M. E. Church South* v. *Hinton,* supra, it is exempt from taxation.

An educational institution, within the meaning of the constitution and the act of 1907, is one which teaches and improves its pupils. One of the admitted purposes of the complainant lodge is the teaching of patriotism,

benevolence, and orderly moral life, for the purpose of the improvement of its members, and the extension of the influence and blessings of Masonry. The store and range of information of Masonry as an educational institution must of necessity be extensive, for it is common knowledge that its origin is ancient, antedating by many centuries the first principles of the common law and our system of equity jurisprudence. It is not, we think, a far cry to hold that one of the purposes of complainant institution is educational. Its second purpose is the support and maintenance of a widows' and orphans' home, and the assistance of needy Masons and needy Masonic lodges. That this purpose is charitable we have no doubt. Its two purposes, as we find them, are educational and charitable.

The maintenance by it of its reading rooms and its lodge rooms, and the effort by it to secure for itself a permanent home, are but agencies for the advancement and enlargement of the two general purposes above set out. The same may be said of the entertainments which it affords its members. That its purpose is free from the taint of individual profit, and that it is not an institution for private gain, that it has no capital stock, and declares no dividends, are facts which, upon this record, cannot be controverted.

From all of the foregoing, the conclusion we reach is that, under the constitution of 1870 and the act of 1907, the property of the complainant lodge was intended to be exempt from taxation by the legislature in the passage of the act of 1907.

Lodge v. Nashville.

We have been cited on the brief for the city to numbers of cases where courts of last resort of other States have reached conclusions different from that which we have reached in this case.    On the brief for the complainant we have been cited to numbers of cases where courts of last resort in other States have reached conclusions in accord with our view.    It is useless to undertake to reconcile these authorities.    The conclusion reached by us, based upon our own constitution and statutes and the previous decisions of this court, we think is sound and just, and wholly in accord with the intention of the framers of the constitution of 1870 and the legislature which passed the act of 1907.    It results that the decree appealed from will be affirmed with costs.