No. 8850.

HORTON *v.* COLORADO SPRINGS MASONIC BUILDING SOCIETY.

1. TAXATION—*Exemption—Charitable Societies.* A building owned by a corporation organized by several Masonic Societies who own all the stock except the qualifying shares issued to its directors, and which derive all their income from annual dues, fees for initiation, and charitable donations, and devote it en-

tirely to the relief of the needy, is exempt from taxation, though a stand is maintained therein, for the sale to those privileged to be there, of cigars, tobacco, and other like wares, as well as a reading room for the use of members of the different Masonic bodies, and though dances and dinners are given in a room devoted to this purpose, where non-members are admitted, and an admission fee is charged.

2. STATUTES—*Construction.*     Statutory provisions exempting from taxation properties used for charitable purposes are liberally construed.

*Error to El Paso District Court, Hon. J. W. Sheafor, Judge.*

Mr. WILLIS L. STRACHAN, County Attorney, Mr. FRED FARRAR, Attorney General, Mr. W. B. MORGAN, Assistant Attorney General, for plaintiff in error.

Mr. G. W. MUSSER, Mr. C. H. DUDLEY, Mr. E. P. HUFFERD, for defendant in error.

Mr. JOHN M. MAXWELL, *Amicus Curiae.*

Chief Justice Hill delivered the opinion of the court.

The defendant in eror obtained an injunction restraining the plaintiff in error, as treasurer of El Paso County, from collecting any taxes for the year 1914, levied upon a building and its grounds owned by the defendant in error, The Colorado Springs Masonic Building Society. The complaint alleges that said building and lots whereon it is situate are used exclusively for strictly charitable purposes. The answer denies this, and, in addition, alleges that said building has been rented to certain fraternal organizations, as a place for their meetings and entertainments. The replication admits that plaintiff rents the property to certain fraternal organizations, but alleges that said organizations are such as are commonly known as Masonic organizations, and that, together, the said organizations are the sole stockholders of plaintiff, save and except ten qualifying shares held by the directors thereof, and that said rental charge is made to said several organizations, solely as a method of equalizing among them the burden of the

maintenance, and operation of said property, agreed upon as fair and equitable and for no other purpose.

Trial was to the court. The findings were in favor of the plaintiff, and the property held to be exempt from taxation. According to the issues, this had to include a finding that the lots and buildings thereon were used exclusively for strictly charitable purposes. The contention is that the evidence is insufficient to sustain this finding. The testimony is uncontradicted. It shows that the defendant in error is a society organized not for profit; that the principal purpose of its organization was to construct and own a temple or lodge building to be used as a home for the several Masonic organizations of Colorado Springs, including a collateral order known as the Eastern Star; that it was organized by these several Masonic bodies who own all of its stock, with the exception of the ten shares held by its ten directors. Its by-laws provide that none of its stock shall be sold or transferred to any one, except these various Masonic bodies, etc., or their trustees, for the use of said bodies. It is also shown that no other bodies, societies, persons or corporations have used said building since it was erected. The testimony also discloses that these Masonic societies derive their income from annual dues paid by their members, fees for initiation, and donations; that out of this are paid the operating expenses of this building, and the maintenance of these several lodges, and that the balance is used in relief and charitable work; that they contribute from their fund to the relief of their members, wives, widows and orphans, and other Masons who come there for their health, and require assistance; that they are not limited in these respects to this class of persons, but frequently aid other charitable organizations, and needy persons not connected with Masonic societies; that they maintain a plot in a cemetery furnishing graves and headstones for individuals, and frequently pay the entire expense of burial; that some of them contribute to the furnishing of a room in a hospital, for the general use of the hospital; that each of said respective bodies has a re-

lief committee, and there is a general Masonic relief board, to which all contribute; that they visit the sick, and extend advice and assistance to the families of sick persons; that they inculcate and teach to their members respect and support of government and legal authority, right living, service to their fellowmen, morality, temperance and other virtues; that they not only aid in a material way, by furnishing food, clothing and other necessities, but that they aid and comfort mental distress, and alleviate pain and suffering, all of which is done without compensation, gain or profit; that no one has a right to demand or receive anything from them; that they accept and give upon the call of humanity, and minister to man, woman and child as far as their ability as societies will permit; that frequently deficiencies occur in their treasury which are made up by donations of other legitimate means. Per the great weight of authority, this testimony is sufficient to justify a conclusion that these societies are charitable institutions, and that their purposes are charitable purposes.

*Burdine v. Grand Lodge,* 37 Ala. 478; *Mayor, etc., of Savannah v. Solomon's Lodge,* 53 Ga. 93; *Massenburg et al. v. Grand Lodge,* 81 Ga. 212, 7 S. E. 636; *City of Indianapolis v. Grand Lodge, etc.,* 25 Ind. 518; *Morrow, Treasurer, v. Smith, Ex'r,* 145 Iowa. 514, 124 N. W. 316, 26 L. R. A. (N. S.) 696, Ann. Cas. 1912A, 1183; *Mason et al. v. Zimmerman et al.,* 81 Kan. 709, 106 Pac. 1005; *Masonic Home v. Sedgwick Co.,* 81 Kan. 859, 106 Pac. 1082, 26 L. R. A. (N. S.) 702; *State v. Board of Assessors,* 34 La. Ann. 574; *Fitterer v. Crawford,* 157 Mo. 51, 57 S. W. 532, 50 L. R. A. 191; *Plattsmouth Lodge v. Cass County,* 79 Neb. 463, 113 N. W. 167; *State v. Addison,* 2 S. C. 499; *Lodge v. Nashville,* 127 Tenn. 248, 154 S. W. 1141.

Section 5 of article X of our Constitution provides that "Lots, with the buildings thereon, if said buildings are used solely and exclusively for religious worship, for schools, or strictly charitable purposes * * * shall be exempt from taxation unless otherwise provided by general law."

The only law that we have on the subject is section 5545 Revised Statutes, 1908, it provides that

"The following classes of property shall be exempt from taxation, to-wit: * * *

Second—Buildings used exclusively for religious worship, for schools or for strictly charitable purposes, with the grounds whereon the same are situated."

The question for determination is, whether this building (Masonic Temple so-called) is used for strictly charitable purposes within the meaning of our constitution and statutes. The plaintiff in error appears to concede, were the entire building used as lodge rooms, and for lodge room purposes, there would be more reason for the contention that it would come within these provisions, but calls attention to testimony disclosing that while the second floor of the building contains three lodge rooms, with the usual smaller rooms (all of which are used for strictly lodge purposes), the first floor contains a reading room for the use of the members of these different lodges, a smoking and reception room, and another large room which is sometimes used in connection with these other rooms for dinners and dances given by members of these different bodies; that sometimes these entertainments are restricted to members, and sometimes they include non-members. He concedes that said societies use the surplus or income from all sources, after paying running expenses, for strictly charitable purposes. He also concedes that the defendant in error pays no dividends; that none of its officers receive any remuneration for their work; that the rental charge to the different lodges is made solely to cover the actual and necessary operating expenses of the building, and that it never has thus far exceeded or equaled such expenses; that while an admission fee is usually charged for dances, the receipts above actual expenses are, like other funds, devoted to the maintenance of the building. The defendant in error maintains in the building a stand for the sale of cigars, tobacco, playing cards and gum, to those privileged

to be there, but no profit is derived therefrom, and thus far it has been conducted at a loss.

In considering this question, we agree with counsel for plaintiff in error that in one sense it is immaterial what kind of an organization owns this property; that the test is the use made of the property, but in deciding this question it is proper to consider the surrounding circumstances. When thus considered, we are of opinion that for the purposes of taxation the same rule applies to it as would were it owned and directly controlled by these sundry Masonic societies.

Vol. 37 Cyc. 927; *Glengary Co. v. Boehmer,* 28 Colo. 1, 62 Pac. 839; *Kappa Kappa Gamma v. Pearcy as Treasurer, etc.,* 92 Kans. 1020, 142 Pac. 294, 52 L. R. A. (N. S.) 995.

There are two lines of authorities concerning the rule of construction applied to exemption from taxation of properties like that under consideration; one has adopted the strict rule of construction, the other, the liberal or broader rule, as it is termed. This court has heretofore adopted the liberal or broader rule.

In *Cathedral St. John v. County Treasurer,* 29 Colo. 143, at page 145, 68 Pac. 272, the court says:

"The general rule is, that exemptions from taxation are strictly construed, but this rule is not applied with full vigor to the character of exemptions under consideration. In other words, provisions exempting property used for educational purposes are less strictly construed than those exempting property used for ordinary gain or profit. * * *

The words 'solely' and 'exclusively' employed in the provisions of the law under consideration are words of limitation which in their ordinary sense strictly limit the subjects to which they refer, but their purport and meaning in this instance must be ascertained from the intent of the people and the legislature in exempting from taxation property used for educational purposes. In providing for these exemptions, the object was to foster educational institutions by relieving their property, within prescribed limits, from the burden of taxation. This being the end

to be attained, the meaning of the law must be ascertained by a construction within its spirit, purpose and policy not opposed to its letter. * * * The fundamental object of the law was to exempt property used for school purposes from taxation. To carry out this design, the uses permissible must necessarily embrace all which are proper and appropriate to effect the objects of the institution claiming the benefits of the exemption. * * *

So that a use incident to the main purpose for which the property is held is not one which falls within the prohibitions contemplated by the law."

While this case involved the exemption of property used for educational purposes, the rule pertaining to property used for charitable purposes is the same, and was thus recognized in *Bishop and Chapter v. Treasurer,* 37 Colo. 378, 86 Pac. 1021, (known as the Oakes Home case) wherein it is said that a charity as regards the character of the work to be performed, includes whatever will promote in a legitimate way the comfort, happiness and improvement of an indefinite number of persons. While the conclusion reached in this latter case has been seriously criticised, which it may be subject to upon account of the facts pertaining to the services rendered, and the amount of the charges paid therefor, as disclosed by the record, yet were its declarations applied to the facts of this case where nothing is received or expected for the charitable acts continuously performed, it would not be subject to the criticism lodged against it. This liberal rule was also followed in *Colorado Seminary v. Arapahoe County,* 30 Colo. 507, 71 Pac. 410.

In Vol. 12 Am. & Eng. Encyc. of Law (2nd Ed.) at page 306, it is said:

"There are several classes of exemptions in reference to which it has been suggested that the rule of strict construction should be relaxed.

This has been suggested in relations to exemptions of religious, charitable and educational institutions, on account of their meritorious nature and the fact that they

relieve the government of burdens which it would other-wise have to bear."

This rule, or suggestion as the author terms it, was followed in:

*Elks v. Groesbeck, County Treas.,* 40 Utah 1, 120 Pac. 192, Ann. Cas. 1914 C, 940; *State v. Fisk University,* 87 Tenn. 233, 10 S. W. 284; *M. E. Church South v. Hinton,* 92 Tenn. 188, 21 S. W. 321; *Lodge v. Nashville,* 127 Tenn. 248, 154 S. W. 1141; *City of Indianapolis v. Grand Master, etc.,* 25 Ind. 518; *Commonwealth v. Lynchburg Y. M. C. A.,* 115 Va. 745, 80 S. E. 589, 50 L. R. A. (N. S.) 1197; *Sisters of Charity, etc., v. Collector, etc.,* 52 N. J. Law, 373, 20 Atl. 292, 9 L. R. A. 198; *Association, etc., v. Mayor, etc.,* 104 N. Y. (59 Sickle) 581, 12 N. E. 279; *People, etc., v. Commissioners of Taxes,* 36 Hun (43 N. Y.) 311; *People ex rel. v. Commissioners of Taxes,* 11 Hun (18 N. Y.) 505; *Blackman v. Houston Tax Collector, et al.,* 39 La. Ann. 592, 2 South. 193.

The fact that these societies or their members sometimes give a dinner or a dance in the reception and other rooms upon the lower floor, in our opinion, does not change the nature of the use of the building. Many things depend upon who is doing them, and the purposes for which they are being done. For instance, the proprietor of a hotel serves a meal in his dining room at a certain price, for his gain and profit,—in such case no one would contend that it was being used for charitable purposes, yet when a religious organization serves a meal or lap supper in the basement of its church, and charges for it, even for the purposes of raising money to meet a deficiency in connection with its church matters, or to be used in religious work, no authority has ever held that for that reason the church building was not used solely and exclusively for religious worship. The aims and objects of these societies are charitable. The moneys received from their members and otherwise, except sufficient to perpetuate their existence, are devoted to charitable purposes; their existence requires a place like the building under consideration within which to

exist, in order that their charitable work may be continued. The reading rooms, etc., in connection with the lodge rooms, make them all the more attractive and tend to increase the membership, which in turn gives greater opportunity to enlarge the charities performed. The dances and dinners referred to are but an incident in the social life of these societies; they are not for gain or profit, although they may, in some instances, add to the revenue and in the end help to provide more funds to be used by the societies in their charity work. *Lodge v. Nashville,* 127 Tenn., 248, 154 S. W. 1141. It is conceded that the news stand affords no profit to any one, but is simply a matter of convenience. While we appreciate that there is a conflict of authority upon questions of this kind and that it is not always easy to fix the dividing line, yet when tested by what is termed the liberal or broader rule of construction given to the language of our constitution and statutes by former decisions of this court, we cannot agree that the evidence in this case, to which this opinion is limited, is insufficient to justify the findings that this building was being used solely and exclusively for charitable purposes.

Cases holding that property used principally for the benefit only of persons in some way related to the members of a society (an artificial class as it is called) are not exempt have done so generally for the reason that the constitution or statute governing the case provided that the charity shall be a purely public charity. This is true of Pennsylvania, Ohio, Minnesota, Maine and perhaps other states. These cases are not applicable to the question under consideration. Our constitution does not contain the word "public" in connection with "strictly charitable purposes." In addition to the cases heretofore cited, the following, in principle, sustain our conclusion: *St. Paul's Church v. Concord,* 75 N. H. 420, 75 Atl. 531, 27 L. R. A. (N. S.), 910, Ann. Cas. 1912A, 350; *St. Mary's Church v. Tripp, City Treas., etc.,* 14 R. I. 307; *Yale University v. New Haven,* 71 Conn. 316, 42 Atl. 87, 43 L. R. A. 490; *Emerson v. Trustees of Milton Academy,* 185 Mass. 414, 70 N. E. 442; *First*

*Unitarian Society v. Hartford,* 66 Conn. 368, 34 Atl. 89; *Curtis, Collector, v. Odd Fellows,* 99 Me. 356, 59 Atl. 518; *Masonic Home v. Sedgwick Co.,* 81 Kan. 859, 106 Pac. 1082, 26 L. R. A. (N. S.) 702; *Fitterer v. Crawford,* 157 Mo. 51, 57 S. W. 532, 50 L. R. A. 191.

The former opinion will be withdrawn and the judgment affirmed.

*Affirmed.*

Decision *en banc.*

Mr. Justice White and Mr. Justice Teller dissent.

Mr. Justice Teller dissenting:

The exemption of a single piece of property from taxation is not in itself of great moment; but the announcement of a rule under which much property becomes exempt calls for serious consideration. I cannot, therefore, permit the majority opinion to go with a simple dissent.

It assumes, on grounds which to me appear wholly insufficient, that we are bound by former decisions of this court to give to the statutory and constitutional provisions concerning exemption from taxation so liberal a construction as thereby to hold the property here involved not liable to taxation.

The assumption is wrong for two reasons. First, the decisions cited as committing us to the rule of liberal construction do not determine that such rule should be generally applied in this jurisdiction, but only that the rigor of the rule should be modified as to schools; and, second, if it be conceded that the liberal rule has been adopted here, and that it ought, under the doctrine of *stare decisis,* to be followed, it is not applicable in this case.

The majority opinion relies upon *Cathedral of St. John v. County Treasurer,* 29 Colo. 143, 68 Pac. 272, as authority for a liberal construction of the provisions under consideration. In that case the court said:

"The general rule is, that exemptions from taxation are strictly construed, but this rule is not applied with full vigor to the character of exemptions under consideration."

The case involved the question of whether or not a portion of the school property occupied by one who was an instructor in the school was exempt.

The court held; that the object of the exemption of, schools was "to foster educational institutions by relieving their property within prescribed limits from the burden of taxation." It held further that:

"To carry out this design, the uses peimissible must necessarily embrace all which are proper and appropriate to effect the object of the institution claiming the benefits of the exemption."

It was therefore determined that the occupation of a part of the premises by the instructor of the school was a use incidental to the main purposes for which the property was held.

This affords no possible ground for holding that the first floor of the so-called Masonic Temple is exempt. The construction there applied was, as the opinion states, necessary to prevent a limitation of the exemption to the things which are absolutely indispensable to a school, and thus interfere with its work. If it be supposed that a club-house or social-hall is indispensable to the main purpose for which the Masonic Lodges are instituted and property acquired, it is pertinent to inquire why the great majority of lodges have not and never have had club rooms annexed to them? It is also asserted that the liberal rule was followed in *Colorado Seminary v. Arapahoe County*, 30 Colo. 507, 71 Pac. 410. This also involves a school. The liberality of the rule there followed is indicated by the language of the court concerning it, and announcing that a former decision apparently laying down the rule of strict construction in such cases was open to modification so as to determine the fair meaning of the school's charter. The court said:

"The construction should be reasonably strict, but not so strict as to defeat the obvious intention of the General Assembly."

The court was there considering the language of the

charter, and no reference was made to the constitutional and statutory provisions here involved. It held that it was proper to assume that the legislature intended to encourage the founding and maintenance of a school of higher learning, and that, therefore, it must be supposed that the exemption extended to the school's property generally. There was no occasion to consider the terms "exclusive," "solely" or "strictly."

Another case cited is *Bishop and Chapter v. Treasurer,* 37 Colo. 378. This case contains no discussion of the rule and the holding is simply that on the evidence, under the authorities, the property in question was used for charitable purposes.

If, however, it be considered that the cases cited commit us, in any degree, to a rule which is in conflict with sound legal principles, we should not be deterred from announcing the following the correct rule. In *Colo. Sem. v. Arapahoe Co., supra,* in speaking of changing the rule of construction, it is said:

"No general rule of property has been established, no private rights have been acquired by third persons upon the faith of its protection, and none will be impaired if a review of the judgment results in a change of doctrine."

To apply to enactments providing for exemptions a liberal rule of construction is unreasonable, and in conflict with the weight of authority and with established legal principles. As is pointed out in one of the foregoing quotations, taxation is the rule, exemption the exception; and he who claims the benefit of the exception must establish clearly and fully his right thereto. Exemption is in the nature of a privilege conferred by the sovereign,—the public,—and, when the right to it is questioned, it is the duty of the courts, according to the most elementary principles of construction, to resolve all doubts in favor of the state. To apply a liberal rule of construction, is to violate this principle. The rule is applied often, if not generally, to remedial laws, to advance the remedy and suppress the mischief; and in other cases to avoid the effect of out-

grown technical rules.   It should never be applied to defeat the plain language of the statute or to give it effect beyond its evident purpose.   We have heretofore condemned the practice of

"setting up what the court or judges may conceive to be the 'spirit of the law' against the plain letter and principles of the law."   *In re Garvey,* 7 Colo. 502, 4 Pac. 758.

The rule is generally applied in determining whether or not an individual or an organization is within a favored class; but is not applied to relieve one in such class from strict compliance with a prescribed procedure.

It is only by a liberal interpretation of the word "charitable" that the lodge itself can be held to be a charitable organization.

The basis of the exemption of charitable institutions is that the State does not lose thereby, since they assume a burden which the State must otherwise bear.   *Bishop and Chapter v. Treasurer, supra.*

Conceding, now, that by the weight of authority Masonic lodges are charitable institutions, and that the property used for strictly lodge purposes should be exempt from taxation, it by no means follows that all of the property here involved is entitled to such exemption.   How can it be said that the use of so much of this property as is in effect a club-room for the use of lodge members—with no necessary connection with the general work of the order,— relieves the State of any burden?   No construction of the law is required to determine that the use of at least one-half of the property does not meet this basic requirement of a use for charitable purposes such as justify an exemption from taxation.

The majority opinion in one place recognizes that the question turns upon the *use* of the property, though apparently not making it determinative of the case.   It fails to apply the rule that in interpreting statutes and constitutional provisions every word must be given a meaning, so far as possible, in that the words "solely," "strictly," and "exclusively" are ignored.   True, an attempt is made to

show that the club-house part of the property is used for charitable purposes by reference to entertainments in Churches, which, it is said, do not prevent church property being exempt. This overlooks the patent fact that entertainments in church buildings are of occasional occurrence only, and are open to everyone; while the first story of this property is devoted all the time to social purposes, for the benefit of lodge members and their friends. The one is an incident to a charitable use; the other is an independent and continuous use, with no necessary or natural connection with the use of the rest of the property.

If the court's reasoning be sound, a golf course connected with the building, the receipts of which are devoted in part to lodge purposes, should likewise be exempt. It should be noted, too, that there is nothing in the record which *assures* any receipts from the use of the first floor to charitable uses. It may be so conducted as to yield no profits, and, if there are profits, they may or may not be devoted to charity. The result of this consideration is that we have exempted a property from taxation on the mere possibility that it *may be* a source of income to an institution which has, without much reason, been termed a charitable institution.

In this connection we should consider the words "strictly," "solely" and "exclusively." What force or meaning does the majority opinion give to them, if a building used in part for purposes which are not "strictly" charitable, is held to be within the terms of the law? Clearly, the court has in practical effect stricken those words from the constitution and the statute.

The difficulty in drawing the line in applying the law of exemption if *partial* use for the specified purposes gives the right, or if the purposes are not clearly apparent, is evident; and doubtless the law-makers had that fact in mind, and *ex-industria* provided that the use should be *solely* and *exclusively* for charity, and that the purposes should be strictly charitable. The terms used prohibit the construction now given to the law.

The majority opinion states that the existence of these lodges "requires a place like the building under considera-tion within which to exist, in order that their charitable work may be continued." .

Manifestly, this is a mistaken statement. Of the thou-sands of Masonic lodges throughout the country, it is safe to say that but a small proportion own buildings, and still less of them have club-rooms in addition to lodgerooms. The maintenance of the club-rooms, it is said, tends to increase the membership and so enlarge their charities. By parity of reasoning, they should be allowed to conduct, free from taxation, a picture show, or any other amuse-ment device, which would tend to attract new members. This well illustrates the difficulties which confront us when we abandon the limitations imposed by the law, and at-tempt to create a "twilight zone" between the exempt and the non-exempt.

A strict construction of the statute and the constitutional provision is demanded by a consideration of the history of taxation.

Under a simple social organization, with a rapid in-crease of wealth and tax-paying power, the question of exemptions was not of very great importance; but, with increased complexity of social and political relations, and consequent increase of public expenditures, it becomes more and more necessary to widen the field of taxation so as to equalize the burdens of government.

The changed conditions have produced a new view of the law as to exemptions, and the tendency is to limit rather than to expand them. In *Massenburg v. Grand Lodge*, 81 Ga. 212, 7 S. E. 6361, the court said:

"The more one investigates the constitutions, statutes and reports of the several states, the more will he be im-pressed with the tendency to narrow the range of exemp-tions from taxation, and to lay stress on the open, visible and direct use of property as a test of its exemption in the interest of charity."

This tendency is shown in a number of modern cases.

In *Green Bay Lodge v. Green Bay,* 122 Wis. 452, 100 N. W. 837, 106 Am. St. 984, it appeared that the second floor of the building in question, which was owned by the lodge, was used for lodge rooms, while the basement and first floor were used as a club-house for the entertainment and amusement of the lodge members. The court, holding that the property was not used exclusively for benevolent purposes, said:

"While some of the aims of the order are the promotion of benevolence and charity, it is the avowed and obvious purpose of the order to maintain this club-house as a suitable place for the members and their families to congregate for entertainment, amusement, and to provide refreshments. The bestowal of these privileges and benefits is not of a benevolent or charitable character."

It is true that the court there found that the use made of the property resulted in a pecuniary profit, which fact defeated the claim to exemption, but, on the point that the maintaining of a part of the building as a club-house is not an exclusive use for charity, the case is authority. The entire property was held taxable.

In *Boston Lodge Order of Elks v. Boston,* 217 Mass. 176, 104 N. E. 453, a building containing lodge-rooms, and club-rooms, kitchen, etc., was held taxable on the ground that the property was used principally for social, and not charitable purposes.

In *St. Louis Lodge No. 9, B. P. O. E. v. Koeln,* 262 Mo. 446, 171 S. W. 329, L. R. A. 1915C 694, Ann. Cas. 1916E, 784, a like ruling was made upon a similar state of facts.

In *Y. M. C. A. v. Patterson,* 61 N. J. L. 420, 39 Atl. 655, it is said:

"In all statutes exempting property from taxation words descriptive of the property must receive the narrowest interpretation of which they are reasonably capable. So interpreted charitable purposes are eleemosynary purposes, connected with the distribution of charity, i. e., of aid to the needy. It is impossible to hold that these buildings are, in this sense, used exclusively for charitable purposes. With

slight exceptions those who use them are not the recipients of charity, but such as purchase the right to use them at a price deemed adequate."

It was therefore held that since the building was not used exclusively for charitable purposes it was not exempt.

In *Fitterer v. Crawford,* 157 Mo. 51, 57 S. W. 532, 50 L. R. A. 191, it was held that none of the property was exempt unless it was all used for charitable purposes; that it was not enough that the income from a part not used by the lodge was applied to charitable use.

It is clear that the use of part of the building for noncharitable purposes puts that much of the property in competition with all persons who have property to rent for similar purposes.   Were the first floor of the building not used for social purposes, the parties not thus using it must, if they would have a club-room, either buy or lease other property which pays taxes.   No one would claim that property, used as is the first floor of the building in question, and separate from the building containing the lodge rooms, would be exempt.   That being so, it is evident that the only ground of exemption is its physical connection with the lodge rooms.   It cannot be said that the people, who frequent the rooms on the first floor and enjoy its privileges, are objects of charity.   Doubtless, they would resent such an imputation.   Yet, if as to them the first floor is not devoted to charitable uses, it is not so used at all.

According to the majority opinion the fact that the income from the use of the first floor, if any, is devoted to charity makes the use of that floor charitable.   But that is contrary to the authorities and to the plain meaning of the law.

In *Trustees v. Bohler,* 80 Ga. 159, 7 S. E. 633, it was held that property whose rentals were applied to the construction of an alms-house was only indirectly used for charity, and hence was taxable.

In *Mason v. Zimmerman,* 81 Kans. 799, 106 Pac. 1005,

it was held that a building occupied by the Grand Lodge of Masons was not exempt because not "used directly, immediately and exclusively in dispensing charity."

Clearly, this building is not used solely and exclusively for strictly charitable purposes, and ought not, therefore, to be exempt.

Decided June 4, A. D. 1917. Rehearing granted.

Affirmed on rehearing May 6, A. D. 1918.