COUNTY COMMISSIONERS ET AL. V. COLORADO SEMINARY.

1. CORPORATION — SPECIAL CHARTER — EXEMPTION.— An exemption provision in a special charter, the charter having been accepted and acted upon, becomes a part of the contract existing between the corporation and state. This contract cannot be impaired by subsequent legislation, constitutional or statutory.
2. TAXING POWER — LIMITING OR ENLARGING.— A statute or contract limiting the taxing power must be closely scrutinized, and no enlargement of its scope should be permitted.

3. CHARTER EXEMPTING SEMINARY PROPERTY.— The charter provision of a seminary that "such property as may be necessary for carrying out the design of the seminary in the best manner, while used exclusively for such purpose, shall be free from taxation," only exempts property in actual use for school buildings, *campus* and the like.

*Appeal from District Court of Jefferson County.*

APPELLEE, the Colorado Seminary, was duly incorporated for educational purposes on the 5th of March, 1864, by an act of the territorial legislature.   (The sections of this statute involved in the present case sufficiently appear in the opinion.)   The corporation thus provided for accepted the provisions of the charter, was duly organized, and has been and is now a prosperous institution of learning.

On the 25th of April, 1881, one James B. Avery donated and conveyed to the seminary certain lands aggregating about two hundred acres, "and the said the Colorado Seminary accepted and received the same for the sole use and purpose of such seminary, and for carrying out the design thereof in the best manner."   The lands thus conveyed were unoccupied and open prairie land, and so remained during all the time they were so held and owned by the said seminary.   In 1884 this land was sold and conveyed by the seminary to one Shellebarger; but prior to that date, to wit, in June, 1882, the same was sold for taxes by the county treasurer, the county itself becoming the purchaser at such tax sale, and receiving the certificate of purchase in pursuance thereof.

The present action was brought to enjoin the county treasurer from issuing the tax deed in pursuance of such sale; to compel the county to redeem these lands therefrom; and to have the sale canceled and satisfied, and the taxes "declared null, void and illegal, and of no effect." To the complaint filed setting up the foregoing, with other essential facts, the defendant demurred, on the ground that no cause of action was stated.   This demur-

rer was overruled by the court below, and, defendant electing to stand thereby, a decree was entered in accordance with the prayer of the complaint.

Prior to the ruling upon the demurrer, however, the following stipulation was filed in court, and became a part of the matters considered with the pleadings in rendering judgment: "It is hereby stipulated that as matter of fact in this cause the lands described in the complaint in this action were not donated by said Avery to the plaintiff or held for the purpose of using the same for the erection of seminary buildings thereon, or for play-grounds for students attending the seminary, or for the *campus* of the seminary, but the same were so donated and given by said Avery to the plaintiff and held to the end that the increase thereof, if any, should be applied exclusively for carrying out the design of said seminary in the best manner, and that the avails of said lands, if sold, should be applied in like manner and not otherwise."

From the decree entered as aforesaid the present appeal was taken.

Mr. JOSEPH MANN, for appellants.

Mr. WM. B. MILLS, for appellee.

CHIEF JUSTICE HELM delivered the opinion of the court.

The Colorado Seminary having been organized as a corporation, and having proceeded in the performance of its appointed work under the special charter granted by the territorial legislature, the provision of this charter allowing exemptions from taxation became a part of the contract existing between it and the state. This contract could not be impaired by subsequent legislation, constitutional or statutory. Cooley, Const. Lim. 415, and cases cited; *Railway Co. v. McClure*, 10 Wall. 511; *White v. Hart*, 13 Wall. 649; *Delmas v. Insurance Co.*

14 Wall. 661.  But, since it operates as a limitation of the taxing power, it is our duty to carefully scrutinize its conditions, and not permit an enlargement of its scope.  We again quote with approval, as we have heretofore had occasion to do, the following language used by the supreme court of the United States: "The taxing power is vital to the functions of government.  It helps to sustain the social compact, and to give it efficacy.  It is intended to promote the general welfare.  It reaches the interests of every member of the community.  It may be restrained by contract in special cases for the public good where such contracts are not forbidden, but the contract must be shown to exist.  There is no presumption in its favor.  Every reasonable doubt should be resolved against it.  Where it exists it is to be rigidly scrutinized, and never permitted to extend, either in scope or duration, beyond what the terms of the concession clearly imply.  It is in derogation of public right, and is only a trust created for the good of all."  *Tucker v. Ferguson*, 22 Wall. 527; *Bank v. Tennessee*, 104 U. S. 493; *Washburn College v. Commissioners*, 8 Kan. 344; *People v. Hall*, 8 Colo. 485; *People v. Henderson*, 12 Colo. 369.

The wisdom and propriety of exempting from taxation certain property devoted to education are not questioned; but the foregoing principles are nevertheless to be applied in construing statutes granting such immunity.

The charter provision under which exemption in the present case is claimed reads:  "Such property as may be necessary for carrying out the design of the seminary in the best manner, while used exclusively for such purpose, shall be free from all taxation."  If the land referred to in this action is exempt from taxation by virtue of the foregoing statute, it follows logically that all real estate owned by the corporation is favored with a like immunity; for the seminary is only authorized to acquire.

hold and convey property "for carrying into effect the object of its incorporation." It can become the proprietor of no estate which is not owned and held exclusively for the purpose of effectuating directly or indirectly the prosecution of its beneficent work.

Thus, under the view of counsel for appellee, ownership becomes the test of exemption from taxation. But if the legislature had intended to establish this test that body would doubtless have so declared, thereby simplifying the provision, and avoiding the present and like controversies. Instead, however, of saying that property *owned* by the institution should be exempt from taxation, the legislature enacted that property necessary for carrying out the design thereof, "while used exclusively for such purpose," should enjoy this immunity. The thought that ownership was intended to be the test is expressly negatived. The clause, "while used exclusively for such purposes," especially when coupled with the preceding expression, "such property as may be necessary," etc., denotes an intention to make something else besides ownership the criterion. If this be not so, then the clause in question is meaningless. The word "used" embodies a different thought from the word "owned." The phrase "used exclusively" is clearly a limitation upon the general ownership. It is here employed in contradistinction to "ownership." It designates a specific part or portion of the property owned. It will not do to say that ownership implies use, because either may exist without the other. There may be an ownership only, independent of a use, and there may be a use not coupled with ownership.

We are aware of no instance where use, and not ownership, was by constitution or statute made the test of exemption, in which it has been held that property situated like the land here in question was exempt from taxation. In *Washburn College v. Commissioners, supra,* the constitutional provision construed read: "All prop-

erty used exclusively for * * * educational * * * purposes * * * shall be exempt from taxation." Yet it was held in a very clear and forcible opinion prepared by Mr. Justice Brewer, that land acquired for the sole purpose of erecting college buildings thereon, but which had not at the time of the tax levy been so used, was subject to taxation. The circumstances in that case more strongly supported the theory of exemption than the circumstances in this; because here the land was not held, or even intended, for the erection of college buildings, or for a *campus* or play-ground for the use of students; throughout, the design was to ultimately sell it, and make use of the avails in carrying on the work of the institution. The exemption provision considered by the learned judge is substantially the same as the one before us; for it does not alter the effect to substitute in place of the words, "exclusively used for educational purposes," found in the Kansas constitution, the words, "exclusively used for the purposes of carrying out the design of the seminary," employed in this territorial statute.

The decision in *University v. People*, 99 U. S. 309, so confidently relied upon by counsel for appellee, is not in conflict with the foregoing view. The constitution of Illinois adopted in 1848, which is there construed, reads: "And such other property as the general assembly may deem necessary for school * * * purposes may be exempt from taxation." The court holds that there is a broad distinction, so far as this question is concerned, between property "necessary for school purposes" and property "used for schools." And the opinion expressly declares that had the latter phrase, or its equivalent, been employed, the court would have agreed with the supreme bench of Illinois in denying the exemption where the property was not in actual use. Mr. Justice Miller, who writes the opinion, for the purpose of showing the marked difference in this respect between the constitutional pro-

visions of Illinois adopted in 1848 and in 1870, places them in juxtaposition. The later provision reads: "And such other property as may be used exclusively for * * * school * * * purposes may be exempted from taxation." The learned judge then proceeds as follows: "When the constitution in 1870 came to be reconstructed, its framers had learned something about exemption from taxation. * * * Here it is only such property as may be exclusively used for school purposes that may be exempted. * * * The general law passed in 1872 to give effect to the change in the constitution exempted only 'the real estate on which the institutions of learning are located, not leased by such institutions or otherwise used with a view to profit.' This is what the supreme court (of Illinois) says was meant by the constitution of 1848; but if it was, it takes a deal of change in the language when the framers of the new constitution and of the new tax law came to express the same idea. We cannot come to the conclusion that they were intended to mean the same, but that the later law was designed to limit the more enlarged power of the earlier one." From this quotation it appears that if the Illinois constitution of 1870 had been under consideration the supreme court of the United States would have united with the supreme court of Illinois in denying the exemption there claimed. But it will be seen by comparison that there is no substantial difference between the language used in the later Illinois constitution and that employed in the territorial statute relied upon by appellee. The design of the seminary is precisely the same as that of other schools and institutions of learning. And the expression of the statute, "such property as may be necessary for carrying out the design, * * * while used exclusively for this purpose," is in its legal significance synonymous with the Illinois constitutional expression, "property * * * used exclusively for * * * school * * * purposes." Thus, in our judgment, the case in

99 U. S. is found, when carefully studied, to be an authority directly supporting the position of appellant and not that of appellee.

The language employed in the statute before us is perhaps not so plain as it might be; but a fair construction thereof points to the conclusion that it was the intention to relieve from taxation only such property as should be in actual use, viz., the seminary buildings, *campus*, and the like. We certainly cannot say that the purpose to exempt property situated like the land here referred to appears with that degree of clearness required in this class of cases by the authorities cited at the commencement of this opinion.

The judgment of the court below will be reversed and the cause remanded, with directions to dismiss the complaint.

*Reversed.*