[No. 4226.]

THE COLORADO SEMINARY V. THE BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY ET AL.

1. **Stare Decisis.**

The maxim of stare decisis should not be allowed to stand as an absolute bar in the way of a re-examination of legal questions previously decided by the same court if improperly determined, and particularly where the decision reviewed has not passed into a settled rule of property.

2. **Taxes and Taxation—School Property—Statutory Construction.**

The charter of the Colorado Seminary (Session Laws 1864, p. 209) authorizes the trustees to "acquire, hold and convey property, real, personal and mixed to the extent they may judge necessary for carrying into effect the objects of this incorporation," and also provides that "such property as may be necessary for carrying out the design of the seminary in the best manner, while used exclusively for such purpose, shall be free from all taxation." Held, that exemption from taxation is not limited to property in actual and necessary use for school purposes, such as school buildings, campus and the like, but includes all the property of the corporation the income from which and the use of which is exclusively devoted to the purposes of the seminary and which is necessary in carrying out its design.

*Error to the District Court of Arapahoe County.*

Messrs. Wells & Taylor and Messrs. Doud & Fowler, for plaintiff in error.

Mr. C. E. Herrington, Mr. George F. Dunklee and Mr. O. E. Jackson, for defendants in error.

Chief Justice Campbell delivered the opinion of the court.

The controversy is between the county of Arapahoe, represented by its board of commissioners, and the Colorado Seminary; the former asserting and the latter denying, that certain property of the Seminary is subject to taxation.   The case calls for a construction of the charter of the Seminary which was granted by an act of the legislative assembly of the territory of Colorado in 1864.—Session Laws 1864, p. 209. Section 5 and a portion of section 1 are the only provisions which are material.   Among other things, section 1 constitutes the trustees named therein a body corporate "for the purpose of founding, directing and maintaining an institution of learning, *  *  * with full power to  *  *  * acquire, hold and convey property, real, personal and mixed, to the extent they may judge necessary for carrying into effect the objects of this incorporation."   Section 5 reads:

"Such property as may be necessary for carrying out the design of the Seminary in the best manner, while used exclusively for such purpose, shall be free from all taxation."

At the threshold of the case we are confronted by a decision of this court (*Commissioners v. Colorado Seminary*, 12 Colo., 497) which, if not modified or overruled, the county attorney says is conclusive against the contention of plaintiff in error.   Its counsel, however, insist that there is such a material difference in the facts of the two cases as to render

the decision there inapplicable here, at least as to a portion of the property involved. A careful examination of that opinion, and a comparison of the facts of the two cases satisfies us that if the construction of the Seminary charter which, in the closing words of the opinion, it was intimated that the court was inclined to adopt, controlled that decision, then that construction, if adhered to, is decisive of this case in favor of the county. It becomes necessary, therefore, to determine, *first,* whether that decision is to be reconsidered; and, *second,* if so, what is the proper construction of the provisions of the charter of the plaintiff in error which are applicable to this controversy.

1. This court has gone possibly as far as any appellate tribunal in maintaining the maxim *stare decisis.* The rule, however, is not inflexible, and the maxim should not be allowed to stand as an absolute bar in the way of a re-examination of legal questions previously decided by the same court, if improperly determined, and particularly where the decision reviewed has not passed into a settled rule of property. This is well illustrated in *Calhoun G. M. Co. v. Ajax G. M. Co.,* 27 Colo., 1, wherein this court overruled one of its former decisions upon an important question of mining law announced fourteen years before and repeatedly re-affirmed.

So far as we are advised, no other corporation of the state has a charter similar to the one under consideration, hence, no general rule of property has been established, no private rights have been acquired by third persons upon the faith of its protection, and none such will be impaired if a review of the judgment results in a change of doctrine.

Yet, for another reason, we reluctantly enter upon a reconsideration of this cause. The writer of the opinion and his associates evidently gave to the

important questions before the court diligent atten-
tion.  For their judgment we have sincere respect,
and their conclusion should not be lightly set aside.
These considerations, however, should not deter us
from reviewing the question if we are thoroughly
satisfied that their conclusion was wrong in whole or
in part.  We proceed, then, to the second proposition
submitted.

2.  It is said by the learned judge in the case
referred to that taxation is the rule and exemption
the exception; that there is no presumption in favor
of exemption, but that every reasonable doubt should
be resolved against it.  In a later case decided by
this court (*Bishop etc., v. Treasurer Arapahoe
County*, 29 Colo., 143, 68 Pac., 272), it was said:
"Provisions exempting property used for educational
purposes are less strictly construed than those ex-
empting property used for ordinary gain or profit;"
and it was also said that the meaning of words em-
ployed in the exemption statutes "must be ascer-
tained from the intent of the people and the legisla-
ture in exempting from taxation property used for
educational purposes."  While the decision there was
based upon the general exemption law, the same rule
applies to a construction of the charter under consid-
eration.

But if a stricter rule than the one indicated
in our later decision should prevail, we think that
the previous construction of the charter of plaintiff
in error was too narrow, if the closing words of the
opinion correctly announce the actual conclusion
which the court reached.  The construction should be
reasonably strict, but not so strict as to defeat the ob-
vious intention of the general assembly.  Apparently
the decision was based upon the meaning attributed
to section 5 of the charter as thus stated in the opin-
ion: "The language employed in the statute before

us is perhaps not as plain as it might be; but a fair construction thereof points to the conclusion that it was the intention to relieve from taxation only such property as should be in actual use, viz, the Seminary buildings, *campus,* and the like.''

In that opinion, *University v. The People,* 99 U. S., 309, is cited as a case which, when carefully studied, is an authority directly supporting the rule announced. Our study leads us to an opposite conclusion. The question before the federal court was whether certain property of the Northwestern University was exempt. The supreme court of Illinois had held it liable to taxation. The exemption claimed was based upon a section of an act of the Illinois legislature of 1885 providing: ''All property, of whatver kind or description, belonging to, or owned by, said corporation, shall be forever free from taxation for any and all purposes.'' All parties conceded that this language was broad enough to cover the exemption, but the contention of the tax officers of the state was that the act was in violation of the constitution of 1848, which reads: ''Such other property as the general assembly may deem necessary for school * * * purposes, may be exempt from taxation.'' The property was listed for taxation in 1874 under the revenue act of 1872, which exempts from taxation only ''the real estate on which the institutions of learning are located, not leased by such institutions or otherwise used with a view to profit.'' This act was passed under the Illinois constitution of 1870 which provides: ''Such other property as may be used exclusively for * * * school * * * purposes, may be exempted from taxation.'' The argument for the state, to which the state supreme court yielded its assent, was that the revenue act of 1872 meant what the constitution of 1848 said, which was substantially what the consti-

tution of 1870 also said, and that this act was the limit to which the legislature could go in releasing property from taxation. But the supreme court of the United States reversed this holding. Mr. Justice Miller, who wrote the opinion, said: "The distinction is, we think, very broad, between property contributing to the purposes of a school, made to aid in the education of persons in that school, and that which is directly or immediately subjected to use in the school. The purposes of the school and the school are not identical. The purpose of a college or university is to give youth an education. The money which comes from the sale or rent of land dedicated to that object aids this purpose. Land so held and leased is held for school purposes, in the fullest and clearest sense." That learned jurist also said that the constitution of 1848 does not say "property used for schools," and he further observes that if the language were that the legislature might "exempt property for the use of schools," the conclusion of the Illinois court might be upheld. But he proceeds to say that the constitution said that the legislature might exempt from taxation " 'such property as they might deem necessary' (not for the use of schools, but) 'for school purposes'."

It is to be observed that the federal court did not say that the Illinois revenue act of 1872 was the full limit of the power which the legislature could exercise under the constitution of 1870, or that the property there in question could not be exempted thereunder, for that was not the question for decision. It merely observed upon this point that the supreme court of Illinois said that the revenue act of 1872 was what the constitution of 1848 meant; but the federal tribunal did not even intimate, as we read the opinion, that the act of 1872 was the full measure of exemption provided for by the later constitution. Justice Miller,

it is true, remarked that the later constitution of 1870 was designed to limit the power of the one of 1848, but did not assume to indicate in what particulars or to what extent; for it was not essential to the determination of the matter before the court for him to do so. For aught that appears to the contrary in the opinion, the legislature of Illinois, under the constitution of 1870, might have exempted from taxation property exclusively used for school purposes, even though it was not property upon which the buildings of the institution were actually located. Indeed, such we think the fair inference from the opinion; and while, as we have just stated, the court did say that the later constitution was designed to limit the more enlarged power of the earlier one, there is no authority for saying that the federal court agreed with the supreme court of Illinois in its construction of the later constitution. But, if any intimation is given at all, it is that the supreme court of the United States, even under that constitution, would exempt from taxation such property as is involved in the case at bar.

If, as contended by our own court in its former opinion, "such property as may be necessary for carrying out the design of the seminary in the best manner, while used exclusively for such purpose" (which is the language of the charter before us), is, in its legal signification, synonymous with the language of the Illinois constitution of 1870, "property used exclusively for school purposes," we are of opinion that both warrant the exemption claimed here.

In the light of the foregoing, and if the case were one of first impression, would we not unhesitatingly declare that the property here involved is not liable to taxation? Let us scrutinize carefully the charter provisions. One of the duties of the trustees of the Seminary thereunder is to maintain an institution of

learning, and to that end they are authorized to hold property to the extent they judge necessary for carrying into effect the objects of the institution.  The general assembly declared that "such property as may be necessary for carrying out the design of the Seminary in the best manner, while used exclusively for such purpose, shall be free from all taxation." In the former opinion it was said that this section of the charter did not make ownership the test of exemption, but it was the use of the property that determined whether it should be liable to taxation. If use is the test, we do not believe that it was the intention of the legislature to exempt only such property as should be in actual use, viz, Seminary buildings, *campus,* and the like.   Certainly the general assembly was intending in some material way to aid this educational institution.  It was the pioneer school of higher learning in this state.  When its charter was granted by the territorial assembly, no provision for advanced education at the expense of the people had been made.   It is not reasonable to suppose that when the law-making power, desiring, as it did, to encourage the object of its incorporators, created this corporation and conferred a power and imposed a duty upon its trustees to maintain an institution of learning, and to that end authorized them to hold property to the extent they deemed necessary to carry out the general object, and exempted from taxation "such property as may be necessary for carrying out the design of the Seminary in the best manner, while used exclusively for such purposes," it so far lost sight of the benefits it attempted to confer that it deliberately limited that exemption to a species of property which, in the nature of things, constitutes but a very small part, in value and extent, of the property of any successful school of learning, and by so limiting the scope of the aid materially hindered its

managers in carrying out the design of the school in
the best manner. Rather must we suppose that the
general assembly in requiring the trustees to main-
tain an educational institution intended, by the ex-
emption granted in section 5, to relieve from taxation
all property of the corporation which in its use was
exclusively devoted to, and which contributed or min-
istered to, the general design *in the best manner*.
There is some significance in its use of the words we
have italicized. Certainly the design could not be
carried out ''in the best manner'' by the trustees if
only that property actually used for buildings and the
like was exempt. The general purpose could be ac-
complished in the best manner, so far as the legisla-
ture could give aid at all, only by exempting from tax-
ation all its property, the income of which, and the
use of which, were exclusively devoted to the purpose
of founding and maintaining an institution of learn-
ing. It goes without saying that such real estate as
is covered by buildings for the use of students and for
recitation rooms would be a small part of the prop-
erty, and not go far towards maintaining a school.
Endowments of money from which an income is de-
rived, and other income-producing property are vi-
tally essential to enable the trustees to maintain the
institution which the act authorizes them to carry on.

The language of the Illinois constitution of 1848
under which the supreme court of the United States
held that the general assembly might exempt from
taxation property similar to the property involved
in this case, is no broader than the language of the
exempting clause of this charter. Both upon reason
and authority we are of opinion that all property
which the Seminary owns is exempt from all taxation
while it is exclusively used for carrying out the de-
signs of the Seminary in the best manner, though not

directly and actually used in the school itself. The property herein involved comes within this class.

By the decree of the lower court some of the property described in the complaint was held exempt from, and some subject to, taxation. In so far as it exempted from taxation the property therein described, the decree is affirmed, and to the extent it held other property therein described as subject to taxation, it is reversed and the cause is remanded with instructions to the district court to vacate its former decree and enter a new decree exempting from taxation all the property described in the complaint.          *Judgment modified.*