## No. 13,396.

CITY AND COUNTY OF DENVER ET AL. *v.* COLORADO SEMINARY.

(41 P. [2d] 1109)

Decided December 21, 1934.

Mr. JAMES D. PARRIOTT, Mr. FRANK L. HAYS, for plaintiffs in error.

Messrs. HUGHES & DORSEY, Messrs. PERSHING, NYE, BOSWORTH & DICK, Mr. A. L. DOUD, for defendant in error.

110

*En Banc.*

Mr. Chief Justice Adams delivered the opinion of the court.

The Colorado Seminary brought suit in the district court of the City and County of Denver to enjoin the assessment and levy of taxes upon certain property for the years 1924 to 1932. The City and County of Denver and William F. McGlone, as manager of the department of revenue of the City and County of Denver were joined as defendants. An injunction was granted and errors and cross-errors are assigned. When not otherwise designated, the parties will hereafter be referred to as plaintiff and defendants as they were aligned in the trial court.

The plaintiff came into corporate existence through a special charter granted by the Legislative Assembly of the Territory of Colorado on March 5, 1864. This charter provides that twenty-eight persons ''be and they are hereby constituted a body politic and corporate, for the purpose of founding, directing and maintaining an institution of learning, to be styled the Colorado Seminary, * * *.'' Section 5 of the act provides: ''Such property as may be necessary for carrying out the design of the Seminary in the best manner, while used exclusively for such purpose, shall be free from all taxation.'' Ter. Laws, '64, p. 209.

Pursuant to the purpose for which it was conceived, the corporation founded an institution in Denver in the year 1864. Students were admitted and classes carried on from that period until 1868, when due to financial difficulties the plaintiff was unable to conduct a school for a time. During a part of this time the Colorado Seminary did not own any property. A mortgage on its school building was foreclosed in 1870 and the property bought in by Hon. Samuel H. Elbert, a member of the board of trustees of the plaintiff for many years. In

1874 he conveyed it to Governor John Evans, also a trustee, who held it until 1880, when he reconveyed it to the seminary. In September of 1880 students were again admitted. From that date until the present time a school has been carried on under the direction and control of the Colorado Seminary. In the summer of 1880 the University of Denver was incorporated. Since 1880 the school operated by the Colorado Seminary has been popularly known as the "University of Denver." However, the University of Denver has at all times been a corporation directly controlled by the Colorado Seminary. The original constitution of the Society of the University of Denver provided:

"Article III. The members of this Society shall be: The Secretary, for the time being, of the Colorado Annual Conference of the Methodist Episcopal Church, and the Secretaries (while in such office) of such Annual Conferences as shall hereafter be organized within the territory now occupied by the said Colorado Annual Conference; the Presiding Elders, for the time being, of the aforesaid Annual Conference or Conferences; the President for the time being of the Colorado Seminary; and the members of the Executive Committee, for the time being, of the Board of Trustees of said Colorado Seminary; together with such honorary members as they may from time to time elect."

This was amended in 1898 so as to read, "the members of the Board of Trustees, for the time being, of Colorado Seminary." The president of Colorado Seminary is ex officio chancellor of the university. The principal activities of the University of Denver as a corporation under that name have been to hold an annual election and confer degrees. It has never owned any property or conducted a school, these functions having been retained and exercised by Colorado Seminary. The underlying object of the University of Denver seems to be to permit use of a name which, while preserving the original purpose of

Colorado Seminary, will better express the modern idea of such an institution of higher learning.

The property involved consists of certain lots located on the corner of Sixteenth and Champa streets in Denver, and an office building thereon known as the University Building. The lots were originally owned by Corwin R. Welsh and Mary Thomas Welsh, who leased them to plaintiff's remote grantor for a period of ninety-nine years with the privilege of two renewals for like periods, or a period of two hundred ninety-seven years, with provision for payment of ground rent of $36,000 per year. The lease required the lessees to construct a building of certain specifications on the land, which when built should belong to the lessee. Upon default in the terms of said lease, title to the building, and the improvements thereon, shall revert to the owners of the underlying fee. After a building had been constructed, the lease was transferred by mesne conveyances down to the plaintiff. In 1923, Mr. James H. Causey offered the property in question to the plaintiff as a gift, with an understanding on the part of the seminary to pay to Mr. Causey and his wife during their lives an annuity of $9,000. At the time there were large mortgages on the property, and there was some hesitation on behalf of the seminary in accepting the gift from doubt whether it could be so managed as to yield a net income and also consideration whether it would be exempt from taxation. An arrangement was made which permitted the seminary to use the building for five years and at the end of the five years decide whether or not to accept the gift. On June 1st, 1923, conveyance was made to the seminary pursuant to this plan. During the five year trial period Mrs. Causey died and Mr. Causey relinquished all claim to the $9,000 annuity. The indebtedness on the property was materially reduced during this period, and in 1928, the seminary elected to keep the property. It thus acquired and holds ownership of the building and also all rights under the lease on the ground.

From 1924 to 1931, inclusive, the then manager of the department of revenue of the City and County of Denver placed an assessed valuation on the lots and also an assessed valuation upon the buildings and improvements located on the lots. Thereupon he placed the lots on the assessment roll, but withheld the buildings and improvements from the assessment roll. No taxes were claimed during this time on the buildings and improvements, but the assessed valuations were made a permanent record in the office of the manager of the department of revenue, and designated as an assessed valuation of property exempt from taxation. In each of these years the plaintiff paid the tax on the lots, but claimed complete exemption for the lots as well as the buildings and improvements.

In 1932, defendant McGlone concluded that it was his duty to attempt to collect taxes for the years 1924 to 1931, inclusive, upon the buildings and improvements, and for 1932 on the whole. He thereupon took the assessed valuation for each year and applied thereto the levies for such years. July 30, 1932, defendant McGlone notified plaintiff that the buildings and improvements had been placed on the assessment roll, and gave plaintiff an opportunity to object in respect of the assessment by written objections to be filed before August 10, 1932. Plaintiff filed its objections directed against assessment not only of the buildings, but of the lots as well, and also claimed that since no notice and hearing had been given, to collect taxes of previous years amounted to an attempt to deprive plaintiff of property without due process of law. Then defendant McGlone rescinded his former action to the extent as he said that as a matter of courtesy he would permit a hearing as to valuation. The plaintiff did not avail itself of this opportunity, and the property was again placed on the assessment rolls. Plaintiff filed a petition with the board of equalization of the City and County of Denver for relief, which was denied. Thereafter plaintiff filed its petition with the

Colorado tax commission, which likewise denied relief. This suit was then commenced.

Plaintiff contends that not only the building owned by it and its leasehold interest, but also the lessors' interest in the lots are exempt, while defendants claim that all are subject to taxation. The trial court held that the building and leasehold interests of the plaintiff for the years in question are exempt, but not the fee title or reversionary interest, since this is held by third parties who are not entitled to exemption. Plaintiff's claim is based primarily upon the legislative act of 1864 and the exemption clause in that act hereinabove quoted. Plaintiff claims further that such property is also exempt under section 5, article 10 of the state Constitution. Defendants assert that plaintiff has forfeited whatever freedom from taxation the latter enjoyed under its charter, that the Constitution supersedes the charter, and that in any event the property of the kind described is not exempt.

■ Two prior attempts to tax property of the seminary have been carried to this court for determination. *County Commissioners v. Colorado Seminary*, 12 Colo. 497, 21 Pac. 490, and *Colorado Seminary v. Board of County Commissioners of Arapahoe County*, 30 Colo. 507, 71 Pac. 410. The identical charter of 1864 now before us was before us for consideration in each of the above cases. There was also an identity of parties, in that the present plaintiff is the Colorado Seminary and the present defendants are the official successors of the officers of the old Arapahoe county, in which Denver was included prior to a division of the counties. Except as herein noted, the subject matter involved in the first two cases and the present cause are the same. With these concurrent conditions, our former adjudications are decisive as to all matters determined or that might have been properly determined therein.

■ The case in the twelfth Colorado reports holds that the provisions of the charter having been accepted

and acted upon by the seminary, became a binding contract existing between the corporation and the state which cannot be impaired by subsequent legislation, constitutional or statutory. In the case in the thirtieth Colorado report, the record shows that the seminary again pleaded exemption from taxation of its property by virtue of the charter and Constitution and the same rule in this respect was followed as in our former decision. In the latter case, Mr. Justice Campbell appropriately denominated the seminary as "the pioneer school of higher learning in the state." Since then it has consistently and continuously exercised its charter and constitutional rights and has steadily grown in commanding influence in accordance with its original purpose. It has become a potent and inseparable factor in the social and educational life of the city and state. This confirms the wisdom of our former decisions and calls for their reaffirmance if necessary. The circumstance that the seminary is popularly known as the University of Denver is only an incident, unimportant as affecting the rights of the Colorado Seminary under the conditions fully explained in our statement of facts. No forfeiture or abandonment of these rights, vital to the existence of plaintiff, was either intended or accomplished in the above manner or at all.

In the above case reported in the twelfth Colorado, we held that only the property of the seminary in actual use for school buildings, campus and the like was exempt from taxation, but in the later case in the thirtieth Colorado reports, a different rule was applied. There we reviewed the former case at length, and also gave consideration to our reported decision in *Bishop v. Treasurer Arapahoe County*, 29 Colo. 143, 68 Pac. 272. In the thirtieth Colorado case, we held that the exemption includes all property of the corporation *the income of which* is exclusively devoted to the purposes of the seminary and which is necessary to carry out its design. It is beyond question that the income derived from the property involved is for this purpose. The reduction of the mort-

gage debt and consequent increase of plaintiff's equity enhances its value and merely postpones its full enjoyment of the revenues to be derived from the building to be used in good season for its charter purposes.

Numerous authorities from other jurisdictions are cited in the briefs, but our own previous decisions under plaintiff's charter and the Constitution of this state are ample for all purposes. Section 5, article 10, of the Constitution reads: "Lots, with the buildings thereon, if said buildings are used solely and exclusively for religious worship, for schools, or for strictly charitable purposes, also cemeteries not used or held for private or corporate profit, shall be exempt from taxation, unless otherwise provided by general law." See the following cases in which we have held that exemption from taxation exists under the above section: *Pitcher v. Miss Wolcott School*, 63 Colo. 294, 165 Pac. 608; *Horton v. Colo. Springs Masonic Building Society*, 64 Colo. 529, 173 Pac. 61; *Board of County Commissioners v. San Luis Valley Masonic Ass'n*, 80 Colo. 183, 250 Pac. 147; *Denver Turnverein v. McGlone*, 91 Colo. 473, 15 P. (2d) 709; *El Jebel Shrine Ass'n v. McGlone*, 93 Colo. 334, 26 P. (2d) 108; *Kemp v. Pillar of Fire*, 94 Colo. 41, 27 P. (2d) 1036.

We have considered all points raised in the briefs, but find no error in the record. The judgment must be accordingly affirmed.

Judgment affirmed.

MR. JUSTICE HILLIARD dissents.

MR. JUSTICE HILLIARD, dissenting.

I cannot share the opinion of the court. The astounding result of the decision, which I shall endeavor to point out, is so shocking that I am constrained to give expression to my view.

The exemption granted the seminary by the legislative act of 1864 is in this language: "Such property as may be necessary for carrying out the design of the Seminary

in the best manner, while used exclusively for such purpose, shall be free from all taxation." Ter. Laws, '64, p. 209.

This exemption, applied to the twelve-story building at a street intersection in Denver where traffic is reputed to be the heaviest in the state, a building used exclusively for stores and offices, and maintained by the seminary for the profit it may make, this exemption, I say, the court has construed as though it read, "All property owned by the seminary shall be free from all taxation." And since the building is occupied and maintained for revenue purposes, as it is, let me inquire if it is logically possible that it can simultaneously be "used exclusively for such [seminary] purpose" within the intent of the legislative exemption? Unless the legislature intended to limit the exemption as thus indicated, why was the exemption expressed in what must be said to be an elaborate and useless string of words, thirty in number, when less than half that number would have sufficed and served better? Why did the legislature not simply say, "All property owned by the seminary shall be free from all taxation"?

We said, in *Murray v. Montrose County*, 28 Colo. 427, 429, 65 Pac. 26, that "Exemptions from taxation are to be strictly construed, and cannot be enlarged by construction, for unless the privilege is limited to the very terms of the law under which it is claimed, its operation would be extended beyond what was intended." This language was quoted with approval in *San Luis Co. v. Trujillo*, 93 Colo. 385, 395, 26 P. (2d) 537, and it should have been applied in the case at bar. As Chief Justice Taney said: "And if individuals choose to accept a charter in which the words used are susceptible of different meanings, * * * if they * * * claim an exemption from their equal share of the public burdens, or any peculiar exemption or privilege, they must show their title to it, and that title must be shown by plain and unequivocal language." *Ohio Life Insurance and Trust Co. v. Debolt*, 16 How. 416, 436. The court here has manifestly relieved the sem-

inary of the duty of showing its title to the exemption, for, I submit, if that just burden had been put upon the seminary its suit would have failed.

I am not persuaded that the more remote a grant of exemption is the more clearly we can see and the more justly construe its language. I see no reason, and certainly no sufficient reason, either in this case or in *Colorado Seminary v. Commissioners,* 30 Colo. 507, 71 Pac. 410, to override the rule announced otherwise in *Commissioners v. Colorado Seminary,* 12 Colo. 497, 21 Pac. 490. The latter decision expressed the general rule which existed at the time the grant of exemption was made to the seminary, many times theretofore and thereafter announced, that property of a religious, charitable or educational institution, *which is rented out for revenue,* and not directly used for the purposes of the institution, is not exempt from taxation as property used for such purposes, *although the entire income therefrom is so used.* Annotation, 50 L. R. A. (N. S.), p. 1211; 2 Cooley on Taxation (4th Ed.), pp. 1434, 1435, §686; 1 Desty on Taxation, p. 120. The reasoning advanced in *Colorado Seminary v. Commissioners, supra,* merely renders the language of the exemption doubtful at best, and we should recollect that the presumption is always in favor of the taxing power. 37 Cyc. p. 891, 61 C. J. 391, §395.

What I have said would content me in adhering to our earliest decision (Commissioners v. Colorado Seminary), but there are other grounds which, since I have chosen to dissent, should be stated. I quote from the opinion of the court here: "In 1923, Mr. James H. Causey offered the property in question to the plaintiff as a gift, with an undertaking on the part of the seminary to pay to Mr. Causey and his wife during their lives an annuity of $9,000. At the time there were large mortgages on the property, and there was some hesitation on behalf of the seminary in accepting the gift from doubt whether it could be so managed as to yield a net income and also consideration whether it would be exempt from taxa-

tion." So this doubtful net income was to be turned into a certain annuity, stated, it is true, thereafter to have been relinquished, but admitted to have certainly been so conditioned and enjoyed nevertheless. Thus was done by indirection what admittedly could not and cannot be done by direction, which is said to be a fraud (Note 93, 19 C. J. 385), and in which the seminary joined. A sorry spectacle, I submit. Surely no court should condone and support acts of this kind. The English courts have frowned upon such practices. In *Jeffries v. Alexander,* 11 H. L. (Reprint) 562, 573, it was said: "To hold otherwise would * * * invite a dexterous use of legal learning and forms to enable men to accomplish what the law forbids * * *." And, page 577, "If * * * the intender knew that the purpose at which he may have aimed was forbidden, then the state of his knowledge * * * may * * * fortify the suspicion that it is a scheme to do what the law forbids."

Consider, please, the effect of the decision of the court. It is plain to me that the taxpayers of Denver by this "gift" have been "exclusively used" to guarantee the bonds on the University Building through tax exemption and corresponding increase in the taxes of all others. And it is equally plain, the frailties of man considered, that we may expect to find downtown Denver incorporated, saddled with bankrupting debts, and presented to the seminary, with an annuity clause attached. Thus have we wrought, and the pages of time will record the names of many generous donors as benefactors of education, although we who know realize sadly that the actual donors are the unheralded and unsung taxpayers.

And so I say this alleged gift of the University Building is and can be nothing more than a liability in perpetuity to every taxpayer in Denver. I wish that when the court realized "there was some hesitation on behalf of the seminary in accepting the gift from doubt whether it could be so managed as to yield a net income," and which could come only from tax exemption, it might have seen

reasons "in the common speech of men," as did Mr. Justice Cordozo of the Supreme Court of the United States in the recent case of *Cortes v. Baltimore Insular Line, Inc.*, 287 U. S. 367, 53 Sup. Ct. 173, and adhered to the rule which we once announced. *Commissioners v. Colorado Seminary, supra.* The holding otherwise is not of my permitting.