Paula Herzmark Executive Director Department of Local Affairs State of Colorado 1313 Sherman Street, 5th Floor Denver, Colorado 80203
Dear Ms. Herzmark:
This is in reply to your letter of August 9, 1979, with attachments, in which numerous questions were presented concerning House bills 1021 and 1531, both of which became law without the Governor's signature on June 29, 1979. House bill 1021 applies to property tax years commencing on or after January 1, 1979, and House bill 1531 applies to tax years beginning January 1, 1980. These effective dates must be considered in determining whether a particular property is taxable or exempt. With this qualification, the questions are set forth verbatim as presented to this office in your attachments and answered in the order in which they were presented, as follows:
QUESTIONS PRESENTED AND CONCLUSIONS
1. Does 39-3-112 define those less-than-fee interests exempt from taxation or does it limit taxation of less-than-fee interests to those specifically excepted in 39-3-112?
 C.R.S. 1973, 39-3-112, as amended, provides that real property which is otherwise exempt shall be subject to taxation provided the property is leased, loaned or otherwise made available to and used in connection with a business conducted for profit. The statute then specifically provides that certain properties, which would otherwise be subject to a tax, are nevertheless excepted. Therefore, real property meeting the prerequisites set forth in subsection (1) of C.R.S. 1973, 39-3-112, is subject to taxation unless excepted under subsections (3) through (7).
2. Are all less-than-full ownerships in otherwise tax-exempt personal property taxable because of the addition of the word REAL to 39-3-112(1)?
 Prior to enactment of House bill 1021, certain less than fee interests, commonly called "possessory interests" of users of both real and personal property were subject to taxation. However, when the legislature amended C.R.S. 1973, 39-3-112(1) to read "Any real
property" rather than "any property" it removed personal property from the purview of the statute. Therefore, personal property is no longer subject to taxation under C.R.S. 1973, 39-3-112.
3. Are all seven subsections, (1) through (7), of 39-3-112
limited to real property because of the addition of the wordREAL in 39-3-112(1), when elsewhere in 39-3-112, the reference is to ANY property?
 Yes. The purview of the statute is set forth in (1) and the following subsections are limited to real
property. Otherwise, the amendment would serve no purpose.
4. 39-3-101(1)(e), (f), and (g) calls for taxation of property not "owned used solely and exclusively for: religious worship; schools; and, strictly charitable purposes." Excluding those properties clearly taxable in 39-3-101(1)(e), (f) and (g); in39-3-112(1) are "exempt properties being operated under a management agreement" taxable? The key words here are ". . . except as otherwise provided in this section; except that, other than exempt properties. . . ."
 The statement that C.R.S. 1973, 39-3-101(1)(e),(f) and (g) "calls for taxation of property not `owned used solely and exclusively for: religious worship; schools; and, strictly charitable purposes'" is incorrect. The statute does not provide for taxation rather it provides for exemption from taxation. Specifically, C.R.S. 1973, 39-3-101(1), the introductory subsection reads, as follows: "(1) The following shall be exempt from general taxation. . . ."
 Real property that is furnished a user by a governmental agency and which would otherwise be exempt from taxation but which is operated under a management contract is nevertheless subject to the tax unless otherwise excepted.
a) The Rocky Flats decision raises some questions. First, is the valuation of a less-than-fee interest consummated by a management agreement (or contract) limited to the contract fee involved?
 In the "Rocky Flats" case, U.S. v. State of Colorado et al., civil action No. 76M1189 (U.S. District Court, Colorado), the court held that the assessor had made no effort "to separate the Government's ownership interest from Rockwell's beneficial use of the property. . . ." The court further concluded that in taxing the totality of the land, improvements and personal property without accounting for any of the imposed limitations on Rockwell's use of the property, the assessor subjected the property and activities of the federal government to state and local taxation and thereby infringed upon the immunity of the United States from the imposition of taxation on its own property. In construing the statute, the court concluded that C.R.S. 1973, 39-3-112, precluded the assessor from segregating Rockwell's interest in Rocky Flats and limiting the tax to that interest, as the statute provided that the user shall be subject to taxation "in the same amount and to the same extent" as if it were the owner of the property.
 Therefore, the court held that the tax was on the property itself rather than on Rockwell's beneficial use and as the statute did not admit of any approach different from that taken by the assessor, the statute as applied to Rocky Flats was unconstitutional. In arriving at the decision, the court noted that the tax asserted by the county was almost double the amount of the fixed fee payments to Rockwell for its contract services.
 The district court decision in the "Rocky Flats" case has been appealed by Jefferson County and the State of Colorado to the Tenth Circuit Court of Appeals. Until final appellate remedies are exhausted a definitive answer cannot be given to your question. However, you are advised that the county and state contend on appeal that the assessor in valuing property pursuant to C.R.S. 1973, 39-3-112(1) is not limited to the contract fee provided in the management agreement.
b) Second, is the valuation of a less-than-fee interest consummated by a management agreement (or contract) to be based only on that property used by or loaned to or made available to the contractee?
 Under H. B. 1021, for tax years beginning on or after January 1, 1979, only real property leased, loaned or otherwise made available and used by the lessee or user is subject to the taxation.
5. In 39-3-112(1), what is the meaning of the phrase, "as necessary to the considerations of a negotiated
contract?"
 The phrase first means that there must be a negotiated
contract, which includes virtually every contract. Further, the property, which is to be tax exempt, must be necessary to the performance of the contract.
6. In 39-3-112(1), where it refers to 39-4-101(2), is real property made available to "an operator who is not a common carrier for compensation or hire" taxable?
 Real property leased, loaned or made available to an "airline company" as defined in C.R.S. 1973, 39-4-101 (1978 Cum. Supp.) is not subject to the "possessory interest"tax. Operators whose aircraft are all certified for a gross takeoff weight of 12,500 pounds or less and who do not engage in scheduled or mail carriage service, would be subject to the possessory interest tax on real property if the other prerequisites of C.R.S. 1973, 39-3-112(1) are met.
a) Referring to the same subsections, is real property made available to "any aircraft operator who does not operate regularly between two or more points or does not publish a flight schedule" taxable?
 Not necessarily. C.R.S. 1973, 39-4-101 includes several other alternative standards under which an airline company may be tax exempt as an airline company as the term is used in C.R.S. 1973, 39-3-112(1). C.R.S. 1973, 39-4-101 defines "airline company" to mean any operator "who engages in the carriage by aircraft of persons or property as a common carrier for compensation or hire, or the carriage of mail, or any aircraft operator who operates regularly between two or more points and publishes a flight schedule." If an operator does not fall within the quoted definition it would not be excepted from the tax unless the property is otherwise excepted in subsections (3) through (7), C.R.S. 1973, 39-3-112.
b) Again referring to the same subsections, is real property made available to "operators whose aircraft are all certified for a gross takeoff weight of twelve thousand five hundred pounds or less and who do not engage in scheduled or mail carriage service" taxable?
 Yes, unless otherwise excepted under the provisions of subsections (3) through (7), C.R.S. 1973, 39-3-112.
7. Does 39-3-112(3) allow taxation of less-than-fee interests of otherwise exempt natural resource properties? Even though 39-7 does not contain a provision similar to 39-6-103(3)?
 No. C.R.S. 1973, 39-3-112 does not vary or change in any way the taxation of natural resource properties as now provided by statute.
8. Is 39-3-112(4) limited to those property owners specified? In other words, is property owned by a school district unaffected by 39-3-112(4)?
 C.R.S. 1973, 39-3-112(4), as amended, is limited to those property owners specified. Property owned by a school district is not affected by the statute, nor is property owned by various special districts. The statute is clear as to the governmental entities covered, and even though school districts and various special districts are political subdivisions of the state, property owned by them would not be subject to the statute.
9. Under 39-3-112(4)(a), who determines whether the payments in lieu of taxes is equal to the amount of tax that the taxing entity would annually receive if the property were owned by any private person or corporation?
 The statute does not specify who determines the adequacy or equivalency of payment in lieu of taxes. However, it is a judgment which should be made jointly by (1) the assessor, who would value the property, and (2) the county commissioners, who set the mill levy and have fiscal responsibility for the county, or the appropriate governing board of the city, town or city and county.
10. Under 39-3-112(4)(a), payments in lieu of taxes are not made to all of the taxing entities involved, but only to that taxing entity that owns the property. Does it then follow that the property should be assessed and taxes collected for those taxing jurisdictions not receiving payments in lieu of taxes?
 Yes. The property would be subject to taxation by taxing entities in which the property is located by all taxing entities not receiving payments in lieu of taxes. For example, city owned property made available to a corporation for its commercial use which is subject to payments to the city in lieu of taxes exempts the corporation from taxes that would be due the city to the extent that the sum paid to the city equals the amount of tax the city would annually receive. However, the property would not be exempt from taxes that other taxing entities could impose due to the location of the property such as taxes levied by a county, school district, fire district and the other various special districts.
11. In reference to 39-3-112(4)(b) and 39-3-112(3), are access roads on natural resource leaseholds and lands taxable?
 C.R.S. 1973, 39-3-112 does not vary in any manner the taxation of natural resource leaseholds.
12. In 39-3-112(4)(c), what is the meaning of the phrase "which is available to the use of the general public?"
 The phrase is construed to mean that the general public may exercise the privilege of using the property. In other words, the property is available for use by members of the general public if they so desire.
13. In 39-3-112(4)(d), is the "term of such lease or loan or other agreement in effect before said date" limited to the primary term of the lease or loan or other agreement? If a contract or agreement is renegotiated or if a lease renewal option is exercised after January 1, 1975, is the less-than-fee interest taxable?
 The exemption shall not extend beyond the primary term or option included in the agreement if exercised before January 1, 1980. In this respect, C.R.S. 1973, 39-3-112(4)(b) (1978 Cum. Supp.), amended by House bill 1531, provided that the tax did not apply to property leased before July 1, 1976 for the term of the lease or option "included in the agreement in effect before said date." If the agreement is renegotiated or if a renewal option is exercised after January 1, 1980, the less-than-fee interest would be subject to taxation. The word "option" was repealed effective January 1, 1980.
14. In 39-3-112(5), because "This section is not applicable to lands used solely for agricultural purposes and improvements thereon," are less-than-fee interests in this type of property taxable?
 C.R.S. 1973, 39-3-112(5) pertains only to "possessory interests" in property that would otherwise be exempt and does not affect other less-than-fee interests in real property such as mining interests. Less-than-fee interests in agricultural pursuits, such as grazing rights, would not be taxable.
15. Under 39-3-112(5), since the lessees actually MANAGE the land once a lease is in existence, what lands "owned by the State of Colorado and managed by the State Board of Land Commissioners" are exempt from taxation?
 All public lands of the state to which the State Board of Land Commissioners have direction and control pursuant to article IX, section 9, Constitution of Colorado, are excepted from the "possessory interest" tax (C.R.S. 1973, 39-3-112).
16. Does the valuation method prescribed by 39-3-112(6) preclude the use of the seven factors enumerated in 39-1-103(5)(a)?
 Yes. As to those lands falling within the purview of C.R.S. 1973, 39-3-112(6), the valuation of such lands shall be accomplished as prescribed therein and not pursuant to C.R.S. 1973, 39-1-103(5)(a) (1978 Cum. Supp.).
17. Under 39-3-112(7), are less-than-fee interests of properties exempt by territorial charter taxable (See Jetton v. University of the South, 208 U.S. 489)?
 No. To the contrary, the legislature has indicated in subsection (7) that less-than-fee interests in properties exempted from taxation by territorial charter are not to be taxed. This is consistent with the decision of Denver v. Colorado Seminary, 96 Colo. 109, 41 P.2d 1109 (1934).
18. Does 39-3-106(1) "The determination as to what portion of such property is so utilized shall be made by the Administrator on the basis of the facts existing on the annual assessment date for such property" supersede 39-3-106(1) " — then such property shall be valued for assessment in such year at that proportion of its valuation for the entire calendar year which the time such property was taxable bears to the entire calendar year?"
 No. However, it is difficult to reconcile the amended portion of the statute providing that "the determination . . . shall be made by the administrator on the basis of the facts existing on the annual
assessment date . . ." with the first sentence of C.R.S. 1973, 39-3-106 providing for proportional valuation "which the time such property was taxable bears to the entire calendar year," unless the amended language is construed to relate to the physical facts of the property and not the facts of proportional valuation. If not limited to physical facts alone, there would be two methods of proportional valuation. In the case of property partially leased or loaned the administrator would look to the facts existing on the annual assessment date (January 1) whereas if all of the property was loaned or leased, the valuation would be based on the portion of the calendar year that the property was taxable, or exempt from taxation, in relation to the entire year.
 The statute is ambiguous and legislation should be sought to clarify the uncertainty. However, until clarified the statute should be construed as stated above.
19. In 39-3-106(1), when the square foot acre ratio has little or no bearing on actual value, such as an upper floor v. a ground floor, is it mandatory that the square foot ratio procedure be applied?
 No. The statute only authorizes the administrator to use this method, but does not require him to do so.
20. In 39-3-106(1) must the Administrator now rule on every partial less-than-fee interest assessment? This was the assessor's responsibility under existing statutes.
 Yes. In the event the property otherwise exempt, is partially leased, loaned or otherwise made available to and used by a business conducted for profit, the determination shall be made by the administrator.
21. The amendment to 39-3-106(1) in effect creates two methods of prorating the exemption of identical properties based solely on whether the property is "partially" leased, loaned, etc., or is "wholly" leased, loaned, etc. In your opinion, is this interpretation of this amendment correct?
Yes. See the answer to 18 above.
22. Your opinion on all of the above questions will have an impact on specific properties. Specifically, are the following less-than-fee interests taxable:
(a) Rockwell International's less-than-fee interest in and to only that property made available to them and used by them at Rocky Flats?
 See the answer to 4A above. C.R.S. 1973, 39-3-112(1), does not exempt property being operated under a management contract from the tax. Accordingly, real
property, otherwise exempt which is leased, loaned or otherwise made available by the United States to "Rockwell" would be subject to the tax.
(b) Shell Chemical Company's less-than-fee interest in and to the Rocky Mountain Arsenal property?
 This office is not aware of the type of agreement under which Shell Chemical Company operates on Rocky Mountain Arsenal. Therefore, this question is not answered.
(c) Property owned by Denver University (Colorado Seminary) and leased, loaned, or otherwise made available to and used by a private individual, association, or corporation in connection with a business conducted for profit?
 The case of Denver v. Colorado Seminary, 96 Colo. 109, 41 P.2d 1109 (1934) is controlling. Therefore, property of Denver University would not be subject to the "possessory interest" tax.
(d) Will this law affect the court decision of Mesa Verde Co. v. Commissioners, 178 Colo. 49, and are the lessees and/or operators of the concessions located at Mesa Verde National Park taxable?
 This law will affect the court decision in the Mesa Verde Company case, because C.R.S. 1973, 39-3-112(4)(c) excepts from the "possessory interest" tax property "by way of lease of or a concession in or relative to (a) park . . ." Therefore, the lessees and concessions located at Mesa Verde National Park are not taxable under the statute.
(e) The less-than-fee interests of the lessees and/or operators (including the Winter Park Association) in and to the Winter Park Ski Area?
 This office is not aware of the type agreement under which lessees at Winter Park operate. Therefore, this question is not answered.
(f) The less-than-fee interests of the lessees and/or operators of retail, beverage, and food outlets at Stapleton International Airport?
 This office is not aware of the agreement under which operators of food outlets at Stapleton operate. Possibly, they are exempt under C.R.S. 1973, 39-3-112(4)(c). However, in the absence of facts the question is not answered.
(g) The less-than-fee interests of the lessees, operators, and users of the parking facilities at Stapleton International Airport?
See the answer to 22F.
(h) The less-than-fee interests of the lessees, operators, and users of the hangar facilities at Stapleton International Airport?
See the answer to 22F.
(i) The less-than-fee interests of the lessees, operators, and users of the property at the State Fair in Pueblo?
 If the question relates to state property leased to an operator to conduct a business on the grounds during the State Fair, you are advised that the "possessory interests" in the real property would be exempt from the "possessory interest" tax pursuant to C.R.S. 1973, 39-3-112(4)(c).
ANALYSIS
The analysis of each question can be found included in the answer. Please refer to the answers above.
SUMMARY
It should be noted that the "possessory interest" statute badly needs legislative revision and clarification.
Very truly yours,
 J.D. MacFARLANE Attorney General
TAXATION AND REVENUE SCHOOL DISTRICTS CONTRACTS PROPERTY, PUBLIC PROPERTY, PERSONAL PROPERTY, REAL AVIATION
C.R.S. 1973, 39-3-112
C.R.S. 1973, 39-3-101(1) C.R.S. 1973, 39-4-101
C.R.S. 1973, 39-3-106(1)
LOCAL AFFAIRS, DEPT. OF Property Taxation, Div. of
It should be noted that the "possessory interest" statute badly needs legislative revision and clarification.